PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 12-4531

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

KENDRICK O'BRIAN CRAWFORD,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington. James C. Dever III, Chief District Judge. (7:11-cr-00151-D-1)

Argued: September 18, 2013          Decided: November 1, 2013

Before WILKINSON, MOTZ, and FLOYD, Circuit Judges.

Affirmed by published opinion. Judge Floyd wrote the opinion, in which Judge Wilkinson and Judge Motz joined.

**ARGUED**: G. Alan DuBois, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant. Yvonne Victoria Watford-McKinney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF**: Thomas P. McNamara, Federal Public Defender, James E. Todd, Jr., Research and Writing Attorney, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant. Thomas G. Walker, United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

FLOYD, Circuit Judge:

Appellant Kendrick O'Brian Crawford appeals his sentence for distributing crack cocaine in violation of 21 U.S.C. § 841(a)(1), contending that the district court erred by using multiple hearsay evidence to determine the quantity of drugs that Crawford sold. Finding no error, we affirm Crawford's sentence.

## I.

On November 21, 2011, a grand jury returned a six-count indictment charging Crawford with distributing 38.3 grams of crack cocaine in violation of 21 U.S.C. § 841(a)(1). Crawford pleaded guilty to these charges without the benefit of a plea agreement. At sentencing, Crawford objected to the presentence report's (PSR) drug quantity calculation, which found him responsible for 408.1 grams of crack cocaine "from at least 2003 until October 27, 2011." This quantity stemmed from seven controlled purchases that produced 38.5 grams of crack cocaine and statements from at least three witnesses who purchased a total of 369.6 grams of crack cocaine from Crawford. Crawford argued that information that two paid informants—Veronica Ready and Melanie Latta—supplied via telephone interviews to Chad Nesbitt, an agent of the Bureau of Alcohol, Tobacco, Firearms

2

and Explosives who did not testify at Crawford's sentencing hearing, was not sufficiently reliable.

At Crawford's sentencing hearing, Brunswick County Sheriff's Office Deputy Jeffrey Beck testified regarding Latta and Ready. Beck explained that he had utilized Latta as a confidential informant on five to ten occasions and said that she was reliable and arrests had resulted from her information. He stated that Latta had never provided him with false or misleading information, and audio and video recordings had verified her information in the past. Beck testified that Nesbitt interviewed Latta on October 18, 2011, and she told him that she had known Crawford for ten years and had purchased an average of an eight-ball of crack cocaine from him every month for the past six years, totaling 230.4 grams. Beck explained that he took part in Latta's first controlled purchase of crack cocaine from Crawford, and it appeared that Latta and Crawford knew each other. Beck also testified that, when officers searched Crawford's residence, they found a pistol matching a description that Latta provided during the October 18 interview. Beck acknowledged that Latta worked with law enforcement for money and to reduce a crack cocaine charge and that her children had been removed from her custody due to her crack cocaine addiction.

3

Beck also testified regarding Ready and Nesbitt's interview with her, which took place on October 20, 2011. He explained that Ready had provided information that had led to federal prosecutions and that had been utilized in state and local cases. Beck also testified that audio and video recordings had verified Ready's information on prior occasions and that she had never provided false or misleading information. According to Beck, Nesbitt told him that Ready said she had purchased approximately ten grams of crack cocaine from Crawford in 2006 and approximately thirty grams of crack cocaine from him in 2007. After 2010, she purchased ten grams of crack cocaine from Crawford. Beck acknowledged that, like Latta, Ready worked with law enforcement for money and to "work off" a crack cocaine charge.

At sentencing, the court found that Ready's and Latta's information was sufficiently reliable to serve as the basis for calculating Crawford's drug quantity. Specifically, the court noted that:

> I do credit Jeff Beck, the agent who testified, concerning his assessment of Ms. Latta and Ms. Ready and their reliability during the course of various investigations and his interaction with them.
> I realize that Mr. Nesbitt is not here and it was a phone interview of those two. I have taken that into account.
> Under 18 USC, Section 3661, of course, I can consider hearsay. The evidence does need to be reliable. The standard is preponderance and doing an

4

analysis under 2D1.1 for purposes of an advisory Guideline calculation, I have taken that into account.

I do think that the weight attributed by these folks is consistent with them being users. . . .

. . . So I do think that these two women have provided truthful information that is reliable, particularly in light of the other information that Agent Beck has provided during his testimony, which I found credible.

The district court deviated from the PSR and found that Crawford's relevant conduct period began in October 2005, not 2003. The court consequently attributed 321.9 grams of crack cocaine to Crawford, including 38.3 grams from the six offenses of conviction and 283.6 grams that Ready, Latta, and drug dealer Lionel Lewis described.[*] This amount produced a base offense level of 32. To this base level, the court added a two-level enhancement for possession of a firearm and a three-level reduction for acceptance of responsibility. With a final offense level of 31 and a criminal history category of III, Crawford's sentencing range under the U.S. Sentencing Guidelines was 135 to 168 months' imprisonment. The court imposed a 135-month prison term.

Crawford now appeals his sentence, alleging that it is procedurally unreasonable because the district court utilized

---

[*] Beck was present at Lewis's debriefing, during which Lewis explained that he had purchased one eight-ball of crack cocaine from Crawford within the past year. Crawford does not dispute the district court's inclusion of this amount in his drug quantity.

unreliable multiple hearsay evidence. Crawford also contends that the use of multiple hearsay evidence violated his Sixth Amendment confrontation right. We have jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.


## II.

We evaluate the district court's sentence "under an abuse-of-discretion standard, which translates to review for 'reasonableness.'" United States v. Mendoza-Mendoza, 597 F.3d 212, 216 (4th Cir. 2010) (quoting United States v. Booker, 543 U.S. 220, 261-62 (2005)). Sentences must be both procedurally and substantively reasonable. See id. On appeal, Crawford contends that his sentence is procedurally unreasonable because the government did not present "sufficiently reliable evidence to support the quantity of drugs attributed to [him] by the court." "We review the district court's calculation of the quantity of drugs attributable to a defendant for sentencing purposes for clear error." United States v. Slade, 631 F.3d 185, 188 (4th Cir. 2011) (quoting United States v. Randall, 171 F.3d 195, 210 (4th Cir. 1999)) (internal quotation marks omitted). Under this clear error standard, we will reverse the district court's finding only if we are "left with the definite and firm conviction that a mistake has been committed." United States v. Harvey, 532 F.3d 326, 336-37 (4th Cir. 2008) (quoting

6

*In re Mosko*, 515 F.3d 319, 324 (4th Cir. 2008)) (internal quotation marks omitted).

Pursuant to the Sentencing Guidelines, sentencing courts must consider relevant conduct in calculating a defendant's advisory sentencing range, including "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). The Sentencing Guidelines make it clear that "[w]here there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance." Id. § 2D1.1 cmt. n.5. This Court has specified, however, that "when the approximation [of drug quantity] is based only upon 'uncertain' witness estimates, district courts should sentence at the low end of the range to which the witness testified," United States v. Bell, 667 F.3d 431, 441 (4th Cir. 2011) (quoting United States v. Sampson, 140 F.3d 585, 592 (4th Cir. 1998)), as the district court did in this case.

When determining facts relevant to sentencing, such as an approximated drug quantity, the Sentencing Guidelines allow courts to "consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G.

§ 6A1.3(a). Accordingly, "[f]or sentencing purposes, hearsay alone can provide sufficiently reliable evidence of [drug] quantity." United States v. Uwaeme, 975 F.2d 1016, 1019 (4th Cir. 1992); see also Bell, 667 F.3d at 441 (explaining that courts may rely on "hearsay testimony of lay witnesses as to the quantities attributable to a defendant"); United States v. Wilkinson, 590 F.3d 259, 269 (4th Cir. 2010) ("[A] sentencing court may give weight to any relevant information before it, including uncorroborated hearsay, provided that the information has sufficient indicia of reliability to support its accuracy."). We therefore need not vacate Crawford's sentence because the district court used hearsay evidence to calculate his drug quantity, assuming that the court did not clearly err in finding the evidence reliable.

Other than his meritless contention that multiple hearsay evidence is per se unreliable, Crawford makes three primary arguments that Beck's recounting of Nesbitt's interviews with Latta and Ready is not reliable evidence of drug quantity. First, Crawford avers that the evidence simply establishes that Crawford dealt drugs, not the quantity of drugs that the court attributed to him. Although the district court did emphasize that "there clearly was a relationship, which certainly is a relationship between drug dealer and drug user, and Mr. Crawford is certainly a drug dealer, crack dealer," it did so to explain

8

why it found Latta's information credible. In other words, the court did not dwell on Crawford's relationship with Latta to establish that he was a drug dealer; it did so because this relationship showed that Latta had first-hand knowledge of the drug quantity attributable to Crawford. Because Latta and Ready certainly provided information regarding drug quantity, Crawford's argument that the evidence shows only that he dealt drugs lacks merit.

Second, Crawford contends that the telephone is an inherently unreliable form of communication, which "simply cannot provide the same dynamics to probe the accuracy and credibility of an informant as a face-to-face interview does." However, this Court has never held that receiving information via telephone renders that information per se unreliable, and our sister circuits have refuted this argument in other contexts. See, e.g., Li Zhou v. Gonzales, 155 F. App'x 359, 360 (9th Cir. 2005); Doby v. DeCrescenzo, 171 F.3d 858, 872 (3d Cir. 1999). We therefore reject Crawford's argument that the district court erred by using telephone calls as a basis for calculating Crawford's drug quantity.

Third, Crawford argues that Latta's and Ready's statements are unreliable because they are drug users who cooperated with law enforcement officials to "work off" pending felony charges. However, although the fact-finder can consider a witness's

9

status as a drug user or criminal history in assessing his or her credibility, this Court has not found that these attributes render a witness per se unreliable. See Pigford v. United States, 518 F.2d 831, 836 (4th Cir. 1975); see also United States v. Cooke, 141 F.3d 1160 (4th Cir. 1998) (unpublished table decision) (rejecting a rule requiring courts to make special findings regarding the reliability of drug addicts and stating that "[a]ll a district court must do is make factual findings . . . concerning the evidence that is presented before it. Implicit in those factual findings is a finding of the reliability of the evidence upon which the findings are based."); United States v. Galloway, 878 F.2d 1431 (4th Cir. 1989) (unpublished table decision) ("The fact that a witness to a drug deal is himself a convicted criminal and/or a drug user, although a factor to be assessed by the jury in weighing credibility, does not make his testimony unreliable as a matter of law."). In fact, this Court has allowed a drug-addicted witness's estimate to serve as the sole basis for calculating drug quantity. United States v. Benehaley, 281 F.3d 423, 425 (4th Cir. 2002). We therefore conclude that Latta's and Ready's drug use and criminal history does not render them inherently untrustworthy, and the district court retained the discretion to weigh these factors in assessing their credibility.

In light of Beck's testimony, the district court did not err in relying on Latta's and Ready's information to determine Crawford's drug quantity for sentencing purposes. Beck testified regarding the women's previous reliability, explained that he had been able to verify their past information, and stated that their information had been used in obtaining arrests and prosecutions. Beck had also observed Latta conducting a controlled purchase of drugs from Crawford and saw that they had a relationship. The court explicitly acknowledged that the information was multiple hearsay and that the women were drug addicts before finding Beck's testimony and Latta's and Ready's information reliable. We therefore conclude that the district court did not abuse its discretion in calculating Crawford's drug quantity for sentencing purposes.

III.

Crawford also argues that the district court's consideration of multiple hearsay violated his Sixth Amendment right to confrontation. Crawford acknowledges that this argument lacks merit because this Court has held that the Confrontation Clause does not apply at sentencing hearings. See United States v. Powell, 650 F.3d 388, 393 (4th Cir. 2011). In light of this precedent, the use of multiple hearsay did not violate Crawford's Sixth Amendment rights.

11

IV.

For the foregoing reasons, we hold that the district court's use of multiple hearsay evidence to calculate Crawford's drug quantity does not render his sentence unreasonable. We therefore affirm his sentence.

AFFIRMED