**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 17-4184

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

OLDEN MINNICK, a/k/a O, a/k/a Old Man,

Defendant – Appellant.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Theodore D. Chuang, District Judge. (8:14-cr-00554-TDC-1)

Argued: December 11, 2019                                    Decided: March 3, 2020

Before KING, HARRIS, and RUSHING, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Derek Andrew Webb, SIDLEY AUSTIN LLP, Washington, D.C., for Appellant. Zachary Byrne Stendig, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF:** Carter G. Phillips, SIDLEY AUSTIN LLP, Washington, D.C., for Appellant. Robert K. Hur, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In August 2016, a jury in the District of Maryland convicted defendant Olden Minnick of eight offenses involving his participation in a drug distribution ring conducted in and around Baltimore. Personnel of the Drug Enforcement Administration ("DEA") and the Baltimore Police Department ("BPD") uncovered and identified the culprits — including Minnick — through the use of wiretaps and other forms of surveillance. On appeal, Minnick challenges the admission of trial evidence derived from the wiretaps and surveillance, the evidence sufficiency for two of the convictions, and the district court's calculation of his Sentencing Guidelines range. As explained below, having thoroughly assessed Minnick's appellate contentions, we reject each of them and affirm.

I.

The facts underlying these proceedings are a bit complicated. To provide context for our rulings, we summarily describe the illicit drug distribution ring in which Minnick participated and the relevant investigative efforts undertaken by the DEA and BPD.

As revealed at trial, Minnick worked with coconspirators and others in a scheme to distribute heroin and marijuana in and around Baltimore.[1] More specifically, Fred Brooks — who oversaw a multi-state drug distribution operation centered in Houston, Texas —

---

[1] Although most of Minnick's illicit activities involved heroin, the indictment also alleged that the conspiracy involved the possession and distribution of marijuana. Minnick's marijuana activities did not play a major role in the proceedings, and we do not elaborate on them herein.

obtained large quantities of heroin from suppliers in Mexico. Every ten days or so, Brooks would send about thirty kilograms of heroin to Sean Wilson, a Baltimore-based heroin dealer. After Wilson received his heroin shipments from Brooks, Wilson supplied two to three kilograms thereof to Minnick — Wilson's primary distributor. To market the illicit drugs, Minnick enlisted coconspirators including Terrance Stanback, Christian Byrd, Kittrell Parks, and Irvin Kenny.

A significant amount of evidence proved at trial that Minnick directed — and supplied illicit drugs for — numerous heroin transactions in Maryland and elsewhere. In conducting those heroin transactions, Minnick and his coconspirators utilized the following procedures: (1) Minnick's coconspirators arranged heroin sales with buyers; (2) informed Minnick of the sales; (3) travelled to Minnick's residence and retrieved heroin to be sold; and (4) met the heroin buyers and consummated the illicit heroin sales.[2]

During their investigation of the drug ring, the DEA agents and BPD officers obtained court authorizations to conduct wiretaps and various forms of electronic surveillance. The surveillance activities began in about April 2014, when the officers secured authorization from a state circuit court in Maryland to track Wilson's cellphone. Shortly thereafter, in May 2014, the state prosecutor sought authorization from that same court to conduct a wiretap of Wilson's phone (the "Wilson Wiretap"). The state court approved the Wilson Wiretap after concluding that probable cause existed to believe that

---

[2] On at least one occasion, police officers interrupted one of the illicit drug transactions, stopping Minnick's coconspirator Stanback after he had left Minnick's home. The officers seized more than 100 grams of heroin from Stanback.

3

Wilson was using his cellphone to commit violations of Maryland drug laws. The same month that officers obtained authorization to conduct the Wilson Wiretap, a state court in Baltimore entered an order authorizing GPS tracking of Minnick's cellphone and the collection of cell-site location information. In June 2014, a state circuit court in Maryland authorized a wiretap of Brooks's phone (the "Brooks Wiretap"). In so doing, the state court determined that there was probable cause to believe that Brooks was using his cellphone to commit criminal violations of Maryland drug laws.

Shortly after approval of the Brooks Wiretap, the investigation of the drug distribution ring migrated to the Maryland federal court. In July 2014, that court authorized a wiretap on a cellphone used by Minnick's coconspirator Christian Byrd (the "Byrd Wiretap"). The affidavit supporting the Byrd Wiretap identified several federal drug laws that Byrd, Minnick, and others were violating. In August 2014, a federal judge in Maryland renewed the order authorizing the Byrd Wiretap and entered an additional order authorizing a wiretap on Minnick's cellphone (the "Minnick Wiretap"). As with the other wiretaps, the Minnick Wiretap was supported by an affidavit that described his drug-related activities. The federal judge renewed the Minnick Wiretap again in September 2014. Together, these wiretaps and the electronic surveillance procedures allowed the federal authorities to identify and prove Minnick's role in the illicit drug distribution conspiracy.

As part of the federal investigation, a grand jury in the District of Maryland returned a ten-count indictment in December 2014 against Minnick and Stanback. The indictment charged Minnick with offenses that included the following: (1) conspiracy to distribute and possess with intent to distribute marijuana and heroin, in contravention of 21 U.S.C.

4

§ 846; (2) four counts of using a communication facility during the commission a drug felony, in contravention of 21 U.S.C. § 843(b); (3) two counts of possessing with intent to distribute heroin, in contravention of 21 U.S.C. § 841(a)(1); and (4) two counts of maintaining drug-involved premises, in contravention of 21 U.S.C. § 856(a)(1).

Prior to trial, Minnick sought to suppress evidence derived from the Wilson Wiretap, the Byrd Wiretap, and the Minnick Wiretap. Minnick also contended that the affidavit supporting the Byrd Wiretap materially misrepresented statements made by a confidential informant. Minnick requested that the federal court conduct a pre-trial hearing — pursuant to the Supreme Court's decision in *Franks v. Delaware* — regarding the Byrd Wiretap. *See* 438 U.S. 154 (1978).[3] After conducting a suppression hearing, the court denied Minnick's motions and his request for a pre-trial *Franks* hearing.

Following a four-week trial, the jury convicted Minnick in August 2016 of eight of the offenses charged in the indictment.[4] The verdict found that a kilogram or more of heroin was attributable to Minnick. Minnick moved for judgments of acquittal and a new trial, contending, inter alia, that there was insufficient evidence to support his convictions on Count Three (using a communication facility in furtherance of a drug felony) and Count

---

[3] Under the *Franks* decision, a defendant is entitled to an evidentiary hearing at which he may attack the veracity of an affidavit supporting a search warrant — provided there are substantiated "allegations of deliberate falsehood or of reckless disregard for the truth." *See* 438 U.S. at 171.

[4] Before the jury returned its verdict, the trial court granted Minnick a judgment of acquittal on a single charge of using a communication facility during the commission of a drug felony.

5

Four (possessing heroin with intent to distribute). Additionally, Minnick sought a post-trial *Franks* hearing based on purported misrepresentations in the affidavits supporting the Byrd Wiretap and the Minnick Wiretap. Although the court conducted a post-trial *Franks* hearing concerning those two wiretaps, it denied the relief requested.

Having resolved the post-trial motions against Minnick, the district court conducted its sentencing proceedings. In calculating Minnick's base offense level under the Sentencing Guidelines, the court found that 9.22 kilograms of heroin were attributable to Minnick. That determination, combined with other relevant factors, resulted in a base offense level of 32. The court then applied a two-level enhancement for maintaining a drug premises. Minnick's total offense level was thereafter fixed at 34, which — combined with his criminal history category of III — yielded an advisory Guidelines range of 188 to 235 months of imprisonment. The court sentenced Minnick to 168 months in prison. Minnick noted this appeal, and we possess jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## II.

On appeal, Minnick challenges multiple aspects of the district court proceedings. More specifically, Minnick asserts that (1) the court erred in the admission of trial evidence derived from the wiretaps and other forms of electronic surveillance, (2) the court erred in ruling on the sufficiency of the trial evidence supporting his convictions on Counts Three and Four, and (3) the court and the jury erred in their drug-weight findings. As explained below, we reject Minnick's appellate contentions.

6

A.

Minnick contends that the various wiretaps and electronic surveillance procedures were constitutionally and statutorily flawed and that the evidence derived therefrom should have been suppressed.[5]  First, Minnick argues that the Wilson Wiretap and the Brooks Wiretap are infirm because the orders authorizing those wiretaps did not comply with the Maryland Wiretap Act.  *See* Md. Code, Cts. & Jud. Proc. § 10-402.  We readily dispose of Minnick's challenges to the Brooks Wiretap, however, as Minnick did not contest that wiretap in the district court proceedings.  Accordingly, our review is for plain error only. *See United States v. Rooks*, 596 F.3d 204, 210 (4th Cir. 2010) ("Unpreserved claims . . . are reviewed for plain error only."); *see also United States v. Lockhart*, 947 F.3d 187, 191 (4th Cir. 2020) ("To succeed under plain error review, a defendant must show that:  (1) an error occurred; (2) the error was plain; and (3) the error affected his substantial rights.  We retain the discretion to correct such an error but will do so only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." (internal quotation marks and citation omitted)).  Discerning a lack of plain error, Minnick's challenges to the Brooks Wiretap are rejected.

Turning to the Wilson Wiretap, Minnick presents a host of appellate challenges thereto.  In the district court proceedings, however, he contested that wiretap on only two grounds:  (1) lack of probable cause and (2) overbreadth.  Accordingly, those two

---

[5] Several standards of review apply to Minnick's various challenges to the wiretaps and electronic surveillance.  We identify the applicable standards of review during our discussions of those challenges.

challenges are the only asserted errors preserved for appeal. *See In re Under Seal*, 749 F.3d 276, 287 (4th Cir. 2014) ("Arguments raised in a trial court must be specific and in line with those raised on appeal. . . . It follows then that an objection on one ground does not preserve objections based on different grounds." (internal quotation marks omitted)). For such preserved challenges, we review a district court's factual findings for clear error and its legal conclusions de novo. *See United States v. Wilson*, 484 F.3d 267, 280 (4th Cir. 2007). Applying those standards here, we are satisfied that the district court did not commit reversible error in rejecting Minnick's probable-cause and overbreadth objections to the Wilson Wiretap. As for Minnick's unpreserved challenges to the Wilson Wiretap, we discern no plain error. We thus readily reject Minnick's attacks on the Wilson Wiretap.

Second, Minnick asserts that the district court erred in failing to grant his request for a pre-trial hearing under *Franks v. Delaware* and in failing to sua sponte uncover additional *Franks* issues. *See* 438 U.S. 154 (1978). To that end, Minnick contends that he is entitled to relief under *Franks* because the affidavits supporting the Wilson Wiretap, the Brooks Wiretap, the Byrd Wiretap, and the Minnick Wiretap contained omissions and affirmative misrepresentations. Having carefully considered the affidavits underlying the various wiretap authorizations, we are satisfied that an additional *Franks* hearing was not warranted. After all, a defendant seeking a *Franks* hearing — that is, a defendant alleging that an affidavit for a search warrant contains a demonstrably false statement or an omission that renders the affidavit misleading — bears a heavy burden. *See United States v. Tate*, 524 F.3d 449, 454 (4th Cir. 2008) (emphasizing that there is "a 'presumption of validity' with respect to warrant affidavits," and that to "overcome that presumption, a

8

defendant must allege 'deliberate falsehood' or 'reckless disregard for the truth' and include with the allegations 'an offer of proof'" (quoting *Franks*, 438 U.S. at 171)). And Minnick has failed to satisfy that burden.[6]

Finally, Minnick challenges on particularity grounds the warrant issued by the Maryland state court that authorized the GPS monitoring of his cellphone and the collection of cell-site location information from that phone. As Minnick did not raise this contention in the district court, our review is for plain error only. Because we have not identified any such error, we reject Minnick's challenge to the Maryland state court's order.[7]

B.

Minnick next contends that the district court erred in denying his post-trial motion for judgments of acquittal on Counts Three and Four. According to Minnick, there was insufficient evidence to sustain his Count Three conviction for using a communication facility in furtherance of a drug felony and his Count Four conviction for possessing heroin with intent to distribute.

We review de novo the denial of a judgment of acquittal that is predicated on insufficient evidence. *See United States v. Young*, 916 F.3d 368, 384 (4th Cir. 2019). In

---

[6] To the extent that Minnick contends that the district court erred in failing to suppress evidence obtained from the Byrd Wiretap and the Minnick Wiretap, we likewise reject those assertions.

[7] We recognize that Minnick's presentation of his issues on appeal lacked clarity. Consequently, we have scoured the record to review the wiretaps and other forms of electronic surveillance employed by the authorities. After that review — and as explained above — we are satisfied that Minnick's challenges to the various wiretaps and electronic surveillance efforts must fail.

conducting such a review, we view "the evidence in the light most favorable to the prosecution and decide whether substantial evidence supports the verdict." *See United States v. Howard*, 773 F.3d 519, 525 (4th Cir. 2014) (internal quotation marks and alteration omitted). If substantial evidence — that is, "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt" — supports the guilty verdict, we are obliged to affirm the court's denials of the judgments of acquittal. *Id.* (internal quotation marks omitted).

As thoroughly related by the district court, Counts Three and Four were predicated on the following facts drawn from the trial evidence:

> There is no dispute that Byrd and the [confidential informant] spoke about a heroin transaction on June 9, 2014, that Byrd and Minnick spoke by telephone on June 10, 2014 and then again on June 11, 2014 at 11:58 a.m., that Byrd drove to Minnick's residence on Hillantrae Drive in Clinton, Maryland on June 11 and arrived at approximately 2:30 p.m., and that Byrd sold 100 grams of heroin to the [confidential informant] at approximately 5:00 p.m. that day. The Government conducted surveillance that tracked Byrd to Minnick's residence and also saw him meet with the [confidential informant] to complete the sale. Under the Government's theory, the June 11 telephone call was for the purpose of arranging for Byrd to pick up heroin from Minnick's home, and Byrd's trip to Minnick's residence was for the purpose of picking up the heroin that was sold to the [confidential informant] later that day. If true, these facts would establish the elements of Count Three in that Minnick would have intentionally used a telephone to facilitate a narcotics transaction, as well as the elements of Count Four in that he would have knowingly possessed heroin with intent to distribute immediately before supplying the drugs to Byrd.

*See* J.A. 1086-87.[8]

---

[8] Citations herein to "J.A.__" refer to the contents of the Joint Appendix filed by the parties in this appeal.

Accepting the foregoing facts in the light "most favorable to the government," sufficient evidence supports Minnick's convictions on Counts Three and Four. *See United States v. Van Fossen*, 460 F.2d 38, 40 (4th Cir. 1972). Although Minnick complains that there is no direct evidence proving the offenses alleged in those counts, that is of no moment — indeed, "circumstantial evidence may support a verdict of guilty even though it does not exclude every reasonable hypothesis consistent with innocence." *Id.* Because the evidence is more than sufficient to sustain Minnick's convictions on Counts Three and Four, we affirm the district court's denial of his motion for judgments of acquittal insofar as it relates to those offenses.

C.

Finally, Minnick contends that the district court miscalculated his Sentencing Guidelines range. In particular, Minnick argues that the court erroneously attributed 9.22 kilograms of heroin to him during the sentencing proceedings, which improperly increased his base offense level.

Our review of a district court's "calculation of the quantity of drugs attributable to a defendant for sentencing purposes [is] for clear error." *See United States v. Randall*, 171 F.3d 195, 210 (4th Cir. 1999). Clear error occurs when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *See United States v. Harvey*, 532 F.3d 326, 336-37 (4th Cir. 2008) (internal quotation marks omitted).

In establishing drug weight for sentencing purposes, the prosecution is only required to "prove the drug quantity attributable to a particular defendant by a preponderance of the

11

evidence." *See United States v. Bell*, 667 F.3d 431, 441 (4th Cir. 2011). And in assessing whether the prosecution has met its burden concerning drug weight, a district court may consider all "relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." *See United States v. Crawford*, 734 F.3d 339, 342 (4th Cir. 2013) (quoting USSG § 6A1.3(a)). Here, the trial court attributed to Minnick 9.22 kilograms of heroin, relying, inter alia, on evidence gleaned from Brooks's trial testimony and the wiretaps. In arriving at that drug weight, the court knew that 9.22 kilograms "may well underestimate the volume and value of heroin sold by Mr. Minnick." *See* J.A. 1286.

On appeal, Minnick complains that the district court's drug-weight determination is undercut by the lack of direct evidence tying him to any specific amount of heroin and the court's reliance on uncorroborated hearsay statements. Our precedents and the Guidelines, however, make clear that a trial court need not predicate its drug-weight finding on direct evidence. In fact, the Guidelines state that if "there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance." *See Crawford*, 734 F.3d at 342 (quoting USSG § 2D1.1 cmt. n.5). And in approximating drug quantity for sentencing purposes, we have explained that "hearsay alone can provide sufficiently reliable evidence of drug quantity." *Id.* (internal quotation marks and alterations omitted). Put simply, the record reveals that the court thoroughly considered the voluminous evidence bearing on the amount of heroin

12

attributable to Minnick, ultimately arriving at 9.22 kilograms. In these circumstances, we are satisfied that the court did not clearly err.[9]

III.

Pursuant to the foregoing, we reject Minnick's various challenges to his convictions and sentence and affirm the criminal judgment.

*AFFIRMED*

---

[9] Finally, Minnick summarily asserts that the jury erred in finding a kilogram or more of heroin was attributable to him. He does not, however, elaborate on that assertion. Nevertheless, reviewing the verdict's drug-weight determination under the substantial-evidence standard, we discern no error. *See United States v. Denton*, 944 F.3d 170, 179 (4th Cir. 2019) (setting forth applicable standard employed in reviewing jury's drug-weight determination).