**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 22-4339**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

CEDRICK TYLER ARMSTRONG, a/k/a Squeeze,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  James C. Dever III, District Judge.  (5:19-cr-00450-D-1)

Submitted:  June 28, 2023                    Decided:  August 14, 2023

Before RICHARDSON and HEYTENS, Circuit Judges, and FLOYD, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

**ON BRIEF:**  W. Michael Dowling, THE DOWLING FIRM PLLC, Raleigh, North Carolina, for Appellant.  Michael F. Easley, Jr., United States Attorney, David A. Bragdon, Assistant United States Attorney, Ashley H. Foxx, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

A jury convicted Cedrick Tyler Armstrong of possession of a firearm and ammunition after having been convicted of a felony offense, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) (2018).[1]  The district court sentenced Armstrong to 120 months' imprisonment.  Armstrong appeals the district court's denial of his motion to suppress evidence and the admission of a statement made by Armstrong's coconspirator.  We affirm.

During the hearing on Armstrong's motion to suppress, Investigator Todd Williams of the Wendell, North Carolina Police Department testified that, on October 12, 2018, he observed Armstrong driving a Jeep.  Williams had prior knowledge from numerous prior interactions with Armstrong that Armstrong's driver's license had been indefinitely suspended in 2007 and had remained suspended during the eight years that Williams had been a police officer in Wendell.  Williams had last checked Armstrong's license status in June 2018.  Williams testified that, upon observing Armstrong driving the Jeep, he had reason to believe that Armstrong was committing a traffic violation by driving without a valid license.

Williams observed Armstrong drive the Jeep into the driveway of a house that Williams had under surveillance due to reports of drug activity at that location.  Williams

---

[1] Section 924(a)(2) was amended and no longer provides the penalty for § 922(g) convictions; the new penalty provision in 18 U.S.C. § 924(a)(8) sets forth a statutory maximum sentence of 15 years' imprisonment for a § 922(g) offense. *See* Bipartisan Safer Communities Act, Pub. L. No. 117-159, § 12004(c), 136 Stat. 1313, 1329 (2022).  The 15-year statutory maximum does not apply in this case, however, because Armstrong's offense was committed before the June 25, 2022, amendment to the statute.

was familiar with the occupants of the house and their vehicle. Williams observed a man pacing in the front yard of the house. This man was not known to Williams to be an occupant of the residence, and Williams had not previously seen this man at that residence. Williams also noted that the occupant's vehicle was not visible, leading him to conclude that the occupants of the residence were not home.

As Williams continued to observe, Armstrong approached the man in the yard and the two men entered the residence. Minutes later, Williams watched the men carry a flat screen television out of the house and place it in the Jeep. The men went back into the house. When they again emerged, Williams saw that the other man was carrying a bag or a bundle and that Armstrong did not appear to be carrying anything. The unknown man got into the driver's seat of the Jeep, Armstrong got into the passenger seat, and the men drove away from the residence.

Williams had previously arrested Armstrong on robbery and drug charges, and he had knowledge that Armstrong had been implicated in a robbery of a house in this same area earlier in the year. Although Williams did not see burglary tools or any evidence that the men forced their way into the house, he was aware from an incident report from earlier that week that entry into this house could be gained by the use of a stiff card, like a credit card or an identification card. Williams testified that he believed the two men were committing a crime and, as the Jeep left the house, he followed and initiated a traffic stop.

During the traffic stop, the driver, who was identified as Michael Lee Kent, opened the glove compartment, and Williams observed a white powdery substance in a baggie in the glove compartment. When Williams inquired what it was, Armstrong denied that there

3

were drugs in the vehicle and handed the baggie to Williams. Williams field tested the substance, which tested positive for cocaine. Williams then informed Kent that the substance was positive for cocaine and asked him to step out of the vehicle. Kent initially started to comply, and Williams started to place handcuffs on Kent. When Armstrong protested, Kent resisted Williams' efforts, put the Jeep into gear, and drove off—dragging Williams for 25 to 30 feet and running over Williams' foot. Kent and Armstrong engaged law enforcement in a high speed chase, during which shots were fired from their vehicle at the pursuing officer. That officer backed off and eventually lost sight of the Jeep. The officers subsequently learned that Kent had been living at the house Williams had under surveillance and that the television and other property he removed was his.

The officers tracked Armstrong and Kent to an address in Raleigh, North Carolina, from which the officers recovered a firearm and ammunition matching a shell casing that was found along Kent and Armstrong's flight route and a live round of ammunition that was found in the Jeep.

Armstrong was arrested and charged with possession of a firearm and ammunition by a felon. He asserted that the traffic stop was unlawful and moved to suppress evidence discovered as a result of the traffic stop and the subsequent events, including the search of the house that resulted in the discovery of the firearm and ammunition. The district court determined that the traffic stop was valid and was supported by Williams' reasonable suspicion that Armstrong had committed a traffic violation and, alternatively, by Williams' reasonable suspicion that Armstrong and Kent had committed a burglary of the residence

4

from which they removed the television and other property.  The court therefore denied Armstrong's motion to suppress evidence.

On appeal from an order denying a motion to suppress, we review the district court's legal conclusions de novo and its factual findings for clear error.  *United States v. Sueiro*, 59 F.4th 132, 139 (4th Cir. 2023).  We may find clear error "only if we are left with the definite and firm conviction that a mistake has been committed."  *United States v. Crawford*, 734 F.3d 339, 342 (4th Cir. 2013) (internal quotation marks omitted).  Moreover, "[w]hen reviewing factual findings for clear error, we particularly defer to a district court's credibility determinations, for it is the role of the district court to observe witnesses and weigh their credibility during a pre-trial motion to suppress."  *United States v. Pulley*, 987 F.3d 370, 376 (4th Cir. 2021) (internal quotation marks omitted).  Additionally, we "must construe the evidence in the light most favorable to the prevailing party and give due weight to inferences drawn from those facts by resident judges and law enforcement officers."  *United States v. Lull*, 824 F.3d 109, 114-15 (4th Cir. 2016) (internal quotation marks omitted).

"An officer may stop and briefly detain a person when the officer has reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity."  *United States v. Montieth*, 662 F.3d 660, 665 (4th Cir. 2011) (internal quotation marks omitted).  For such an investigative stop to be lawful, the "police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."  *Terry v. Ohio*, 392 U.S. 1, 21 (1968).

A police officer may conduct a traffic stop of a vehicle based upon the officer's reasonable suspicion that a traffic violation has occurred. *Kansas v. Glover*, 140 S. Ct. 1183, 1187-88 (2020). Such a stop is lawful even for a minor traffic violation, such as driving with a revoked license. *Id.* at 1190.

Armstrong contends that Williams' failure to verify the status of Armstrong's driver's license prior to initiating the traffic stop renders the stop unlawful. Based on our review of the record and the totality of the circumstances, we conclude that the district court did not clearly err in finding that Williams' belief that Armstrong had committed a traffic violation was reasonable and that the traffic stop was lawful.[2] *See Sueiro*, 59 F.4th at 139 (providing standard); *Glover*, 140 S. Ct. at 1188 (stating that courts must permit officers to make "commonsense judgments and inferences about human behavior" (citation omitted)). Accordingly, the district court properly denied Armstrong's motion to suppress evidence discovered as a result of the traffic stop and the subsequent events, including the

---

[2] Armstrong contends that the district court did not account for Williams' testimony in the state court that he had checked Armstrong's driving status just prior to the traffic stop. He asserts that the failure to have verified that Armstrong's license was suspended contemporaneously with the traffic stop defeats reasonable suspicion. During the suppression hearing, when asked about his state court testimony, Williams admitted that he "misspoke during that testimony" and explained that at that time, it was his "recollection that [he] ran [the report] that day. [He] did run [the report] that day, just not at that moment." We conclude that the district court did not clearly err in finding Williams credible and in ruling that he had reasonable suspicion of a traffic violation justifying the traffic stop. *See Pulley*, 987 F.3d at 376 (requiring deference to district court's credibility determinations).

firearm and ammunition discovered during the search of the house at which Armstrong and Kent were arrested.[3]

Armstrong also contends on appeal that the district court erred by admitting into evidence a portion of a recorded jail phone conversation in which Kent described the events of October 12, 2018. Armstrong concedes that most of Kent's statement describing the events is admissible. He contends, however, that "the discrete statement that Kent made during this call that 'Bruh star[t]s shooting' was not against Kent's penal interest" and therefore the district court erred in admitting that statement.

We review a trial court's ruling on the admissibility of evidence for abuse of discretion, viewing the "evidence in the light most favorable to the proponent[ and] maximizing its probative value and minimizing its prejudicial effect." *Burgess v. Goldstein*, 997 F.3d 541, 559 (4th Cir. 2021) (internal quotation marks omitted). Thus, we "will overturn an evidentiary ruling only if it is arbitrary and irrational." *Id.* (internal quotation marks omitted). And we will not overturn a conviction due to an erroneous evidentiary ruling if the error is harmless—that is, if we "can say with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." *Id.* at 561 (internal quotation marks omitted).

---

[3] In light of our ruling, we need not consider the district court's alternative bases for denying Armstrong's motion to suppress evidence.

Rule 804(b)(3) of the Federal Rules of Evidence allows the admission of an out of court statement by an unavailable declarant if (1) a "reasonable person in the declarant's position would have made [the statement] only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability" and (2) the statement "is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability." Fed. R. Evid. 804(b)(3).

Rule 804(b)(3) only allows the admission of the self-inculpatory portions of a hearsay statement. *Williamson v. United States*, 512 U.S. 594, 599, 604 (1994). It does not permit the admission of statements concerning the roles of other individuals in the alleged crime. *Id.* at 599-600. Whether a statement is "self-inculpatory" requires an analysis of the statement in the context and may be a matter of interpretation. *Id.* at 603. "A declarant's statement is not magically transformed from a statement against penal interest into one that is inadmissible merely because the declarant names another person or implicates a possible codefendant." *Id.* at 606 (Scalia, J., concurring).

In ruling that the entirety of Kent's statement, including the reference to Armstrong shooting at the police officers, was admissible, the district court found that the reference to Armstrong shooting "directly implicate[d] and inculpate[d] Kent in criminal conduct." We agree with the district court's reasoning that Kent's statement that Armstrong shot at the police was "also inculpatory as to Kent based on either a conspiracy theory or an aiding and abetting theory." The shooting took place as Kent and Armstrong were engaged in

8

joint criminal activity of attempting to flee from the police.  Accordingly, the district court did not clearly err in finding that Kent's statement about Armstrong's criminal actions in furtherance of that joint activity was against Kent's penal interest.  *See Burgess*, 997 F.3d at 559; *see also Pinkerton v. United States*, 328 U.S. 640, 646-48 (1946) (stating standard for coconspirator liability).

In any event, our review of the record establishes that overwhelming evidence—outside of this challenged statement—supported the jury's determination that Armstrong was in possession of a firearm and ammunition on October 12, 2018.  Accordingly, we conclude that any error in the admission of this portion of Kent's statement was harmless.

We therefore affirm the district court's denial of Armstrong's motion to suppress and affirm the criminal judgment.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*