**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 22-4436**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

RAYMOND RONALD JENNINGS,

Defendant – Appellant.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  William L. Osteen, Jr., District Judge.  (1:21-cr-00213-WO-1)

**No. 23-4259**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

RAYMOND RONALD JENNINGS,

Defendant – Appellant.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  Thomas D. Schroeder, District Judge.  (1:22-cr-00214-TDS-1)

Argued: October 30, 2024                              Decided: April 22, 2025

_____

Before WYNN, HARRIS, HEYTENS, Circuit Judges.

_____

Affirmed by unpublished opinion. Judge Harris wrote the opinion, in which Judge Wynn and Judge Heytens joined.

_____

**ARGUED:** Anne Margaret Hayes, Cary, North Carolina, for Appellant. Julie Carol Niemeier, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee. **ON BRIEF:** Sandra J. Hairston, United States Attorney, Margaret M. Reece, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

2

PAMELA HARRIS, Circuit Judge:

When the government tried to indict Raymond Ronald Jennings on drug and firearm charges, it made a series of mistakes that rendered Jennings's first and second indictments defective. By the time the government finally corrected its errors, the Speedy Trial Act clock had run. To remedy that violation, the district court dismissed Jennings's case without prejudice. The government re-indicted Jennings, and a jury ultimately convicted Jennings on all counts.

On appeal, Jennings argues primarily that the Speedy Trial Act violation he suffered resulted from the government's many lapses and entitled him to a with-prejudice dismissal, barring further prosecution. The government's errors in this case are indeed troubling. But under the highly deferential standard we apply to the district court's choice of remedies, we cannot say the court abused its discretion in dismissing Jennings's indictment without prejudice. Nor are we persuaded by Jennings's other challenges to his conviction and sentence. Accordingly, we affirm the judgment of the district court.

## I.

### A.

Raymond Ronald Jennings was arrested in connection with a drug investigation after a search warrant executed at his home yielded a firearm, drugs, and other evidence of drug distribution. A federal grand jury in the Middle District of North Carolina returned a four-count indictment against Jennings. The first two counts charged him with offenses related to fentanyl: in Count I, possessing with intent to distribute fentanyl; and in Count II,

3

maintaining a premises for the purpose of manufacturing, distributing, and using fentanyl. Count III charged Jennings with knowing possession of a firearm in furtherance of the drug offenses in Counts I and II – but it described those offenses as involving the distribution of *heroin*, not fentanyl. J.A. 24–25.[1] And Count IV charged knowing possession of a firearm by a felon.

Jennings was arrested and made his initial appearance on December 29, 2021. That appearance started the "clock" for purposes of the Speedy Trial Act, under which a defendant who pleads not guilty – as Jennings did – must be tried within 70 days, subject to certain exclusions, of his initial appearance. *See* 18 U.S.C. § 3161(c)(1). On appeal, there is no dispute that the 70-day period was exceeded in the months that followed, which featured government errors and oversights as well as repeated turnovers of defense counsel and other complicating factors.

1.

The government's first error emerged almost immediately, when the magistrate judge at Jennings's December 29 initial appearance noticed the defect in the indictment: The first two counts charged Jennings with fentanyl-related offenses, but the third switched from fentanyl to heroin. The magistrate judge suggested that the government might want to file a superseding indictment to correct the error, but the government did not do so, at least not right away.

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

Instead, more than a month later, and still operating under the defective indictment, the parties executed a written plea agreement, filed on February 4, 2022, in which Jennings agreed to plead guilty to Count IV – possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1) – in exchange for dismissal of the remaining counts. During Jennings's Rule 11 plea colloquy, the district court expressed significant concern about the discrepancy in Jennings's indictment, labeling the error "really troubling" and noting the "damage" that could be done to Jennings's confidence in the proceedings against him. J.A. 51–52, 54.[2] The court continued the Rule 11 hearing so it could question the government attorney who drafted the indictment, who was not in court. But the hearing never resumed, overtaken by the subsequent events described below.

2.

A few weeks after the hearing, on February 22, the government corrected its first error. In a superseding indictment, the government again charged, in Counts I and II, offenses related to fentanyl – and this time, in Count III, correctly tracked those counts and charged possession of a firearm in furtherance of drug offenses related to fentanyl. But somehow, the government also introduced a new error into the superseding indictment: While the original indictment had properly labeled fentanyl a Schedule II controlled substance, *see* 21 U.S.C. § 812, the superseding indictment misidentified fentanyl as a

---

[2] During the early stages of Jennings's case, both Judge Loretta C. Biggs and Judge William L. Osteen, Jr. of the Middle District of North Carolina presided over certain portions of the proceedings. Judge Biggs conducted the Rule 11 colloquy referenced above, while Judge Osteen issued the Speedy Trial Act ruling on appeal.

*Schedule I* controlled substance. Finally, Count IV continued to charge possession of a firearm by a felon.

In the meantime, Jennings was obtaining new counsel. Immediately after the Rule 11 hearing, Jennings's counsel moved to withdraw – and Jennings moved *pro se* to remove him – based on conversations related to the error in the indictment. The court granted the motion and appointed Jennings's second lawyer on March 4, 2022. And then – nothing happened. The case remained dormant for two more months, until May 4, 2022, when Jennings pleaded not guilty at his second arraignment. Critically, that two-month delay, on top of the earlier, shorter gap between Jennings's first arraignment and his plea agreement, brought the case outside the Speedy Trial Act's 70-day period.[3]

Recognizing the timing issue, the district court ordered the government to submit briefing on the Speedy Trial Act. It also addressed continued difficulties between defense counsel and Jennings, who had discovered the latest error in his indictment and faulted counsel for not pressing the point. In early June, the district court allowed Jennings's second appointed counsel to withdraw and appointed Jennings a third attorney.

3.

On June 27, 2022, the government finally filed an error-free indictment: a second superseding indictment, otherwise unchanged, that correctly identified fentanyl as a

---

[3] At Jennings's second arraignment on May 4, 2022, Jennings's new lawyer moved for a continuance, which was granted. As the district court would later explain, this effectively stopped the Speedy Trial Act clock on May 4, because the continuance and all subsequent periods of delay were excludable under the Act.

Schedule II controlled substance. Jennings was arraigned for a third time and again pleaded not guilty.

On July 15, 2022, the district court held the Speedy Trial Act hearing directly at issue in this appeal. After a thorough review of the complex timeline outlined above, the district court agreed with Jennings that the Speedy Trial Act had been violated. *See* J.A. 107–55. Some periods of time following Jennings's initial appearance were excludable under the Act, the court determined. But what remained unexcluded – most critically, the days between March 4 and May 4, during which there was no activity at all on Jennings's case – amounted to 93 days, exceeding the 70-day limit imposed by the Speedy Trial Act by 23 days.

As the district court recognized, the statutory remedy for a violation of the Speedy Trial Act is dismissal of the indictment against the defendant. *See* 18 U.S.C. § 3162(a)(2). But the statute leaves to the district court whether that dismissal should be with prejudice – which would bar further prosecution – or without. *See id.* To make that decision, the court turned to the factors set out by § 3162(a)(2): the seriousness of the offense; the facts and circumstances leading to dismissal; and the impact of a reprosecution on the administration of the Speedy Trial Act and on the administration of justice. *Id.*

After addressing those factors at length, the court concluded that dismissal without prejudice was the appropriate remedy. The court focused on the most significant delay in Jennings's proceedings: the period after the government filed its first superseding indictment and Jennings was appointed new counsel on March 4, and before Jennings finally was arraigned on that indictment on May 4. J.A. 131 ("[I]t is clear from the record

7

that this case was simply ignored from March 4, 2022, until May 4, 2022.").  While the government's failure to more promptly schedule the arraignment was "not acceptable," the court declared, the "unusual circumstances" of the case may have caused some confusion, and there was nothing to suggest any "intentional dilatory conduct or pattern of neglect" by the government.  J.A. 139–41.  Given all of the circumstances and the absence of any significant prejudice to the defendant, the court determined that a dismissal without prejudice was appropriate and would advance the goals of the Speedy Trial Act while still recognizing the seriousness of the defendant's conduct.

**B.**

After the district court dismissed Jennings's case without prejudice, the government recharged Jennings, filing a new indictment with the same four counts as its prior indictment.  Jennings was appointed a fourth lawyer, who served as standby counsel after Jennings successfully moved to represent himself at trial.  The jury convicted Jennings on all counts.  Jennings again represented himself at his sentencing hearing – this time with a fifth appointed lawyer serving as standby counsel – and was sentenced to a total of 248 months' incarceration.

Jennings timely appealed the district court's judgment.[4]

---

[4] Jennings sought to proceed pro se on appeal, but we instead appointed appellate counsel for Jennings.  We appreciate the assistance of appointed counsel with this matter.

8

## II.

## A.

Jennings's primary argument on appeal is that the district court erred in dismissing the indictment against him without prejudice under the Speedy Trial Act.  The Act provides that the district court "shall" dismiss an indictment when a defendant's trial does not begin within 70 non-excludable days of, as relevant here, the defendant's initial appearance before the court.  18 U.S.C. §§ 3161(c)(1), 3162(a)(2).  That dismissal may be with or without prejudice, *see* 18 U.S.C. § 3162(a)(2), and neither is a "presumptive remedy" under the Act, *United States v. Taylor*, 487 U.S. 326, 334 (1988).  Instead, "the decision to dismiss with or without prejudice [is] left to the guided discretion of the district court," after consideration of the factors set out in § 3162(a)(2).  *Id.* at 335.  The court's judgment of "how opposing considerations balance should not lightly be disturbed," so long as the court "properly considered" the statutory factors and its "supporting factual findings are not clearly in error."  *Id.* at 337.  Reviewing for an abuse of discretion under this deferential standard, *see United States v. Jones*, 887 F.2d 492, 494 (4th Cir. 1989), we find no abuse of discretion here in the district court's selection of remedy.

The basic parameters of this case are undisputed.  There is no doubt as to the existence of a Speedy Trial Act violation.  The district court calculated that 93 non-excludable days elapsed after Jennings's initial appearance, exceeding by 23 days the

9

Speedy Trial Act's 70-day limit, and the government does not contest that on appeal.[5]  For his part, Jennings does not argue that the district court abused its discretion by ignoring an enumerated § 3162(a)(2) factor, or failing to "clearly articulate" its effect on the analysis. *Cf. Taylor*, 487 U.S. at 336 ("[A] district court must carefully consider [the statutory] factors as applied to the particular case and, whatever its decision, clearly articulate their effect in order to permit meaningful appellate review.").  Instead, Jennings takes issue with how the district court assessed the government's contributions to the delay and weighed the relevant considerations.  But that is precisely the case-specific judgment left to the district court's discretion, *see Taylor*, 487 U.S. at 337, and we see no grounds for disturbing it here.

The first factor, recall, is the seriousness of the offense with which Jennings was charged.  *See* 18 U.S.C. § 3162(a)(2).  Jennings does not dispute the district court's conclusion that the first three counts of his indictment alone – charging drug distribution and an associated firearms offense – "clearly weigh[] in favor of dismissal without prejudice."  J.A. 133.  This is an important concession, because at the end of the day, as the district court explained, the goal is a remedy that advances the "administration of justice" and the ends of the Speedy Trial Act "without diminishing the seriousness of the

---

[5] Jennings suggests that the district court miscalculated and that the correct number of non-excludable days is 96, not 93.  But Jennings does not ask us to reverse on that ground, and we need not resolve the issue here.  The district court gave no indication that its decision might have been different based on this handful of days, and our analysis on appeal would likewise remain the same whether the Speedy Trial Act had been exceeded by 23 days or 26.

defendant's offenses." J.A. 146; *see Jones*, 887 F.2d at 495 (in cases involving very serious charged crimes, sanction of dismissal with prejudice "should ordinarily be imposed only for serious delay").

Jennings does challenge the district court's assessment of the second factor, "the facts and circumstances of the case which led to the dismissal." 18 U.S.C. § 3162(a)(2). According to Jennings, the court "downplayed" the seriousness of the government's errors and lapses, which necessitated a second (and a third) arraignment and then delayed that second arraignment by months. But the district court did appreciate the gravity of these errors, describing as a "serious cause for concern" the government's "failure to schedule or request scheduling" of Jennings's case for the two months between March 4 and May 4. J.A. 134; *see also* J.A. 139 ("[T]here is no excuse for [the government's] failure to . . . schedule the matter some time in March or April. . . . [T]hat failure by the government is not acceptable[.]"). The court also found, however, that this case featured some "unusual circumstances," J.A. 140, that may have contributed to confusion around scheduling Jennings's second arraignment: the never-completed Rule 11 hearing; the withdrawal and replacement of defense counsel; and, perhaps most important, the signed plea agreement, which remained pending after the partial Rule 11 hearing and left both the government and the court unsure as to how Jennings wished to proceed.

After a full review of the record, the court concluded that the government's failings here were inadvertent, not a product of "bad faith or intentional misconduct or delay." J.A. 141. Nor, the court determined, was there any evidence of a "pattern of neglect" by the government. *Id.*; *cf. Taylor*, 487 U.S. at 339 (explaining that finding of "bad faith" or

11

"pattern of neglect" would "alter[] the balance" under § 3162(a)(2) factors). That determination was expressly predicated on the district court's long experience with the local United States Attorney's office in its district – a matter especially within the purview and knowledge of a district court. We cannot say that the district court's assessment of the facts and circumstances of this case was clearly erroneous as a factual matter or outside its wide discretion under § 3162(a)(2).

For similar reasons, we find no error in the district court's evaluation of the third factor, the impact of reprosecution on the administration of the Speedy Trial Act and the administration of justice. Under that factor, as the district court explained, a court considers the need to deter future violations of the Act, as well as the presence or absence of prejudice to the defendant. *See Taylor*, 487 U.S. at 334, 342. The court again relied on its determination that "the mistakes here causing the violation of the Act [were] isolated and not mistakes in which the Government attempted to gain advantage," this time to find that a with-prejudice dismissal was not required to deter future violations of the Act. J.A. 146. And Jennings had shown no substantial prejudice from the delay, the court reasoned: When his second arraignment finally occurred on May 4, he requested a further continuance; and he was detained for only 23 days (26, according to Jennings) in excess of the Speedy Trial Act maximum. *See Jones*, 887 F.2d at 495 (26-day violation of Speedy Trial Act "was not overly long" where defendant was charged with serious crimes). All things considered, the court concluded, a dismissal without prejudice would do justice to the aims of the Speedy Trial Act while also recognizing the seriousness of the crimes with which Jennings was charged.

12

This kind of balancing of interests is at the heart of a district court's discretion under § 3162(a)(2), and we cannot find that the district court here "fail[ed] to act within the limits prescribed by Congress." *Taylor*, 487 U.S. at 337. We share the district court's concern about the government's oversights and errors in this case, and it is possible that another district court might have weighed the factors differently. But the district court here engaged thoroughly with what it recognized as a "close issue," J.A. 145, carefully analyzing each statutory factor in light of the full record and "clearly articulat[ing]" its reasoning, *Taylor*, 487 U.S. at 336. Under those circumstances, we have no grounds for disturbing the district court's decision to dismiss Jennings's indictment without prejudice.[6]

**B.**

We may dispense more briefly with Jennings's remaining claims on appeal. With respect to his convictions, Jennings challenges the district court's denial of his motion to suppress the evidence seized from his residence, arguing that the search warrant for his home lacked probable cause. Reviewing the district court's legal conclusions de novo and its factual findings for clear error, *United States v. Orozco*, 41 F.4th 403, 407 (4th Cir. 2022), we conclude that the motion to suppress was properly denied. We agree with the district court that the warrant was supported by probable cause, based on law enforcement

---

[6] In connection with the Speedy Trial Act violation in this case, Jennings also raises ineffective assistance of counsel claims against his second and third appointed counsel. Claims of ineffective assistance are cognizable on direct appeal only where ineffective assistance "conclusively appears on the face of the record." *United States v. Faulls*, 821 F.3d 502, 507–08 (4th Cir. 2016). The present record does not conclusively establish that Jennings's appointed counsel rendered ineffective assistance. Therefore, Jennings's claims "should be raised, if at all, in a 28 U.S.C. § 2255 motion." *Id.* at 508.

surveillance of Jennings's residence and statements from two individuals implicating Jennings. We also agree with the district court's alternative conclusion that even in the absence of probable cause, the evidence from Jennings's home would be admissible because the officers relied in good faith on a search warrant in conducting their search. *See United States v. Leon*, 468 U.S. 897, 919–23 (1984).[7]

With respect to his sentence, Jennings argues that the district court miscalculated his Sentencing Guidelines advisory range. Specifically, Jennings objects to the district court's inclusion of heroin in the quantity of drugs attributed to him under U.S.S.G. § 2D1.1, given that he was convicted only of crimes involving fentanyl. But district courts "enjoy considerable leeway" in estimating the quantity of drugs attributable to a defendant, and may consider both "'[t]ypes and quantities of drugs not specified in the count of conviction' . . . as long as those drugs were part of 'relevant conduct' under the Guidelines." *United States v. Williamson*, 953 F.3d 264, 269–70, 273 (4th Cir. 2020) (quoting U.S.S.G. § 2D1.1, cmt. n.5); *see* U.S.S.G. § 1B1.3. We discern no clear error in the district court's drug quantity estimation or in its conclusion that, under the circumstances of this case, Jennings's admitted selling of heroin was conduct relevant to

---

[7] Jennings also preserves challenges to one of his convictions, for possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1), under *Rehaif v. United States*, 588 U.S. 225 (2019), and the Second Amendment. Jennings concedes that these challenges are not supported by current law, and we do not address them further.

14

the fentanyl-related activity for which he was charged and convicted.  *See United States v. Crawford*, 734 F.3d 339, 342 (4th Cir. 2013) (noting standard of review).[8]

**III.**

For the reasons given above, we affirm the judgment of the district court.

*AFFIRMED*

---

[8] In recognition of her client's desire to proceed pro se on appeal, Jennings's appointed counsel has requested that we also consider the additional arguments Jennings raises in his own informal briefs.  Under the circumstances of this case, we have reviewed those additional claims, and we find them unavailing.