**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-4832

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

JOSEPH R. ZIEGLER,

Defendant – Appellant.

Appeal from the United States District Court for the Southern District of West Virginia, at Charleston.  David A. Faber, Senior District Court Judge.  (2:19-cr-00148-1)

Argued:  January 28, 2021                           Decided:  June 14, 2021

Before MOTZ, DIAZ, and RICHARDSON, Circuit Judges.

Affirmed by published opinion.  Judge Richardson wrote the opinion, in which Judge Motz and Judge Diaz joined.

**ARGUED:**  David O. Schles, LAW OFFICE OF DAVID SCHLES, Charleston, West Virginia, for Appellant.  Monica D. Coleman, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee.  **ON BRIEF:**  Michael B. Stuart, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee.

RICHARDSON, Circuit Judge:

After wrecking his car, Joseph Ziegler falsely claimed to be an Assistant United States Attorney to avoid charges and retrieve his impounded car. The real United States Attorney prosecuted him for impersonating a federal officer. Though not a lawyer, Ziegler waived his right to counsel and represented himself at trial. The jury convicted him.

Ziegler now claims that the district court erred in permitting Ziegler to represent himself because he was incapable of doing so and because the district court failed to make necessary inquiries into his mental competency to waive counsel. He also argues the evidence does not show that he "acted" as a federal officer. We review both issues deferentially and find no error. The district judge thoughtfully evaluated Ziegler's request to waive counsel and represent himself. Having observed Ziegler firsthand, the district court did not abuse its discretion in permitting Ziegler to waive his right to counsel and represent himself. And the jury's guilty verdict is supported by the evidence. So we affirm.

## I. Background

### A. Events leading to charges

In April 2019, Clay County Deputy Sheriff Michael Morris saw a car speed past him. Deputy Morris pursued, only to find the car crashed in a private driveway. A disheveled and erratic Ziegler sat behind the wheel, and Deputy Morris suspected he had been drinking. Deputy Morris handcuffed and detained Ziegler in his police car and waited on another deputy to conduct a DUI investigation. After Deputy Ryan Thomas arrived, he inspected the car for damage and noticed empty beer cans inside. Deputy Thomas approached the disheveled Ziegler and smelled alcohol. When asked if he had been

2

drinking, Ziegler claimed that he did not "have time for this." J.A. 357. Ziegler refused to take a field-sobriety test or breathalyzer. And after consenting to a blood sample, he then refused to sign the consent form.

Ziegler said that he would rather go to jail than deal with the inquiries because the charges would be dropped. He explained this was inevitable because he was an Assistant United States Attorney working for Mike Stuart (the district's United States Attorney). Ziegler claimed that the deputies did not have jurisdiction to detain him; that he did not need a driver's license to drive in a state where he did not reside; and that he had been pulled over multiple times over thirty years and "gotten out of all of them" because he was an Assistant United States Attorney. J.A. 449. He also cited "a bunch of U.S. Codes" and argued that the Supreme Court had ruled that he did not need a driver's license. J.A. 449; *see also* J.A. 450 (Deputy Morris testifying that Ziegler "said that he was an attorney, he was an Assistant U.S. Attorney and he knew Mike Stuart"). Despite his claims, Ziegler was arrested for driving under the influence, reckless driving, and driving without insurance, a driver's license, or vehicle registration.

At the courthouse, Ziegler told a magistrate assistant, "I'm an Assistant U.S. Attorney and I should not be here." J.A. 481. Ziegler then spoke to the magistrate judge during his initial appearance, explaining that he was an "Assistant U.S. Attorney" and wanted to represent himself. J.A. 512. The magistrate judge also testified that Ziegler said to courtroom officials that he would "take care of this" or that this case would not be there long as he was "going to get this moved to Federal Court." J.A. 515; *see also id*. ("I know Mike Stuart . . . In a few days I'll go down and see him and get all this worked out.").

3

Ziegler posted bond and went to get his car from King's Trucking, where it had been towed after the crash. Because Ziegler lacked proper documentation, King's Trucking refused to release the car. During the resulting argument, Ziegler told the owner that he did not need documentation because he was both a sovereign citizen and an Assistant United States Attorney. Ziegler claimed, "I am a federal prosecutor. . . . You are going to be named in my lawsuit that I'm filing." J.A. 548. When his demands were still denied, he left empty handed.

Ziegler then went to talk to the state prosecutor, who explained he could not speak to him without his attorney. Ziegler again claimed he was an Assistant United States Attorney working with Mike Stuart on special assignment and would represent himself. Despite the state prosecutor's request to end the conversation, Ziegler continued to talk about his case and his constitutional rights. Ziegler also demanded help getting his car back from the impound. The state prosecutor interrupted several times to ask for his supervisor's name, but Ziegler refused to answer beyond claiming he worked for "Mike Stuart." The state prosecutor then contacted the United States Attorney's Office and learned that Ziegler was not an Assistant United States Attorney.

Based on these incidents, Ziegler was federally indicted on two counts of falsely pretending to be an officer of the United States. 18 U.S.C. § 912.[1] The first count alleged that Ziegler falsely impersonated an Assistant United States Attorney to the deputies and

---

[1] "Whoever falsely assumes or pretends to be an officer or employee acting under the authority of the United States or any department, agency or officer thereof, and acts as such, or in such pretended character demands or obtains any money, paper, document, or thing of value" shall be fined or imprisoned not more than three years. 18 U.S.C. § 912.

state officials. The second alleged he claimed to be an Assistant United States Attorney to demand his car back as a thing of value.

## B. Pretrial proceedings

Ziegler was at first represented by a public defender. But he sought to represent himself pro se. So the public defender asked the court to conduct an ex-parte hearing to resolve the issue. At the hearing, Ziegler represented that he was able to defend himself and was "confident" that he would prevail. J.A. 20; *see also* J.A. 22 (noting his Sixth Amendment right to represent himself and explaining, "I'm not incompetent to handle my own affairs"). And he explained that had he known the public defender would not file his requested pretrial motions, he would have done so on his own since he could "do it off the top of [his] head." J.A. 23. The public defender countered that "some of the motions" Ziegler wanted filed were meritless. J.A. 23–24. But the public defender said that he did not "have any questions with [Ziegler's] legal competency at" that point based on Ziegler's "base of experience." J.A. 19.

Ziegler discussed his "experience," suggesting that he represented himself in a prior prosecution—and had that conviction reversed—because "the prosecution got caught falsifying transcripts in the end of the trial." J.A. 18. Later in the hearing, though, it emerged that Ziegler did not represent himself in that appeal and that his conviction was reversed because the court failed to follow proper state statutory procedures in allowing Ziegler's self-representation before the trial court. *See People v. Ziegler*, No. 192701, 1998 WL 1988750, at *1–2 (Mich. Ct. App. Nov. 24, 1998). The court thus questioned whether Ziegler intended to represent himself only to again claim that his waiver of counsel was

5

invalid (just as he had done in the previous case). Ziegler assured the court that he had no such intent. During the court's thorough colloquy, Ziegler suggested that he "studied law" and received a degree in "criminal law." J.A. 29. Ziegler claimed, "I have published cases in which I've represented myself. I'm very familiar with all 27 amendments of the United States Constitution, various SCOTUS cases, and I've successfully assisted prisoners inside of jails and prisons across America." *Id*.

The court then asked Ziegler about his knowledge of the Federal Rules of Evidence, to which Ziegler listed several rules and explained his knowledge came from his familiarity with state rules that in many cases are identical to their federal counterparts. He also noted his familiarity with "writs of habeas corpus, coram nobis, and the like." J.A. 33. Ziegler asserted a familiarity with the Federal Rules of Criminal Procedure stemming from "doing criminal appeals for various prisoners and being—witnessing various trials that's took place in Federal Courthouses, including the City of Detroit." J.A. 33–34.

The court advised Ziegler that he would be better served by allowing the public defender to represent him but acknowledged that Ziegler "had some experience." J.A. 34. The court again questioned Ziegler's desire to proceed pro se, to which Ziegler responded, "Absolutely, Your Honor, yes." J.A. 35. Ziegler affirmed that this was a voluntary decision and did not result from any threats or promises. The court then found that Ziegler's waiver of his right to counsel was knowing, voluntary, and unequivocal. All parties accepted this. And the court appointed the public defender to serve as stand-by counsel.

Ziegler proceeded pro se with his motion to suppress and several other motions. During these proceedings, Ziegler made several odd remarks. For example, when Ziegler suggested that he wanted to introduce evidence about his reversed conviction to support a prosecutorial-misconduct claim, the court questioned its relevance. To this, Ziegler offered a rambling response:

> Because they're completely false, Your Honor, and we have a whole history of the United States doing a lot of things concerning an FBI director six years ago disclosing to the public that for 20 years, they never had any DNA evidence science that people were executed and convicted of. He came forward. He came straight.
>
> And what I'm saying is, we have an intelligent cultured jury. These people aren't inbred, ignorant people. And when they stand here and they watch two officers standing behind me, they're going to know something is not right.

J.A. 164.

At this point, the court cut Ziegler off and addressed several motions that were irrelevant given the case's procedural posture, including his motions for a jury trial, for a jury representing a cross-section of society, and for on-the-record sidebar discussions. The parties then discussed Ziegler's other litigation efforts, which included an attempt to remove his state court prosecution to federal court.

Before trial, the district court again counseled Ziegler that he should allow the public defender to represent him. The court explained, "I read your submissions carefully, and it's obvious to me that you're not a sophisticated person as far as your knowledge of the law. There are a lot of things that it's apparent to me that you don't understand that you think you understand." J.A. 311. Ziegler resisted the court's efforts to change his mind,

7

rejecting the court's suggestion that it could appoint another attorney. The prosecutor asked the court to confirm with the public defender "that he believes his client is competent to represent himself." J.A. 316. The public defender responded that as part of the decision to let Ziegler represent himself, the court "has already found that Mr. Ziegler is competent to the extent he's represented and he knows how courts work." J.A. 316. The public defender reiterated that Ziegler knew "how the system operates," had given the court "a list of his experience," and was "very clear about wanting to proceed on his own." J.A. 316. Thus, the public defender asked "the Court to give him his wish." J.A. 316.

In agreeing to let Ziegler continue to represent himself, the court found no "reason to refer Mr. Ziegler for any kind of a study or anything to determine whether he's competent." J.A. 316. While the court understood Ziegler was "not making a very wise decision here," it was one he was "competent to make." J.A. 317. So the court respected Ziegler's decision to represent himself.

## C.   Trial and post-trial proceedings

During a three-day trial, the Government called seven witnesses, whom Ziegler cross-examined extensively. *See, e.g.*, J.A. 364–440, 456–77, 484–500, 518–39, 556–68, 586–603, 610–15. Ziegler asked several strange questions, was argumentative with the witnesses, was warned about not testifying, and argued with the judge. *See, e.g.*, J.A. 178, 457, 500, 551–53, 556–61, 595, 599–601, 691. But he also gave opening and closing arguments, made good points on cross, had objections sustained, and introduced evidence, including three witnesses. *See, e.g.*, J.A. 335–49, 626–27, 659, 670–72, 674–75, 700–02, 742–59.

8

At the end of trial, the district court denied Ziegler's motion for acquittal, finding the Government presented sufficient evidence to satisfy the offense elements. The court held that the Government's evidence was sufficient to find that Ziegler not only represented himself to be an Assistant United States Attorney but also acted as such. The jury convicted Ziegler on both counts.

Only once convicted did Ziegler assert that he needed a psychological evaluation:

> I need a psych evaluation because I've been telling everybody I haven't had my medication, and this was brought to Judge Tinsley's attention. I'm disabled. I've been disabled for years. I've been denied all of my types of medication that I've been in the jail. I brought it to this federal court's attention. You said you don't get involved with judges' hearings. I have PTSD, bipolar, manic depressive and some other issues and they've been denying me medical attention.

J.A. 785. In a written order, the court denied Ziegler a bond, a new trial, and a judgment of acquittal. In doing so, the court found Ziegler was competent to waive his right to counsel. The court emphasized that Ziegler "did not raise the issue of mental competence until after the jury returned its guilty verdict." J.A. 824.

At sentencing, the court considered the advisory guideline range and imposed a time-served sentence. Ziegler now timely appeals the waiver of his right to counsel and the sufficiency of the evidence. This Court has jurisdiction. 18 U.S.C. §§ 3231, 3742(a); 28 U.S.C. § 1291.[2]

---

[2] The parties submitted supplemental briefing on mootness because Ziegler already carried out his time-served sentence. But Ziegler challenged the legality and validity of his convictions, not the length of his sentence. Both parties agreed that the case was not moot because Ziegler could get back $200 in special assessments and the convictions had collateral consequences. *See Nelson v. Colorado*, 137 S. Ct. 1249, 1255 (2017) (special assessment); *Sibron v. New York*, 392 U.S. 40, 57–58 (1968) (collateral consequences). We agree.

9

## II.   Analysis

Ziegler raises two issues on appeal.  And we affirm the district court on both.  First, Ziegler argues that the district court erred in permitting him to waive counsel.  But we find the district court properly addressed Ziegler's request to represent himself.  Second, Ziegler argues that he did not "act" as a federal official when he claimed to be an Assistant United States Attorney to several deputies and to the tow-shop owner to get his car back.  But a reasonable jury could find sufficient evidence that Ziegler acted as an Assistant United States Attorney in both instances and thus find him guilty.

### A.   The district court did not abuse its discretion in permitting Ziegler to waive counsel

"The Sixth Amendment guarantees to a criminal defendant the right to the assistance of counsel before he can be convicted and punished by a term of imprisonment." *United States v. Ductan*, 800 F.3d 642, 648 (4th Cir. 2015).  But "it is equally clear that the Sixth Amendment also protects a defendant's affirmative right to self-representation." *Id*.; *see also Faretta v. California*, 422 U.S. 806, 819–20 (1975).  The tension between these two rights often places district courts on a tightrope.  Given their superior position to observe and understand, we appropriately grant district courts considerable discretion in walking that line. *See Indiana v. Edwards*, 554 U.S. 164, 177 (2008).

A defendant "may waive the right to counsel and proceed at trial pro se only if the waiver is (1) clear and unequivocal, (2) knowing, intelligent, and voluntary, and (3) timely." *United States v. Bernard*, 708 F.3d 583, 588 (4th Cir. 2013).  To waive counsel, a defendant must also be mentally competent. *Godinez v. Moran*, 509 U.S. 389, 396, 399

10

(1993) ("[T]he competence that is required of a defendant seeking to waive his right to counsel is the competence to *waive the right,* not the competence to represent himself."). And a defendant is competent to waive his right to counsel when he (1) "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding," and (2) "he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960); *see also Godinez*, 509 U.S. at 397, 402 (explaining that the *Dusky* standard provides the constitutional minimum to find a defendant competent to waive counsel).

All that is required is the competence to waive the right to counsel—not the competence to effectively represent oneself. *See Edwards*, 554 U.S. at 172–73 (noting a defendant's ability to effectively represent himself has no bearing on whether he is competent to waive his right to counsel). Ziegler argues that the district court should have applied a higher standard than the competence-to-waive standard in deciding whether to allow Ziegler to represent himself. But while a court *may* impose a "higher standard" on a defendant before permitting him to waive counsel and proceed pro se, nothing requires a court to do so. *Bernard*, 708 F.3d at 585. For a "court *may* constitutionally permit a defendant to represent himself so long as he is competent to stand trial" under the two-part *Dusky* standard. *Id.* at 588–90; *see also United States v. DeShazer*, 554 F.3d 1281, 1290 (10th Cir. 2009). So the district court was not required to separately evaluate whether Ziegler was capable of effectively representing himself at trial. It needed only to evaluate his competence under *Dusky*. And the court did so here.

Whether a defendant waived his right to counsel is a legal question we review de novo. *United States v. Singleton*, 107 F.3d 1091, 1097 n.3 (4th Cir. 1997). But we review a district court's factual competency findings only for clear error. *United States v. Robinson*, 404 F.3d 850, 856 (4th Cir. 2005). "The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Singleton*, 107 F.3d at 1097. Wisely, Ziegler does not challenge the court's substantive finding that he was competent to stand trial. Ziegler also concedes that his request for self-representation was clear, unequivocal, adamant, and timely.

Ziegler instead appears to argue that the court procedurally erred by not adequately considering his mental competency before granting his request to represent himself. *See United States v. Basham*, 789 F.3d 358, 379 (4th Cir. 2015) ("In a procedural claim . . . the movant contends that the trial court failed to properly ensure that the accused was competent to stand trial, as required by 18 U.S.C. § 4241."). Ziegler also contends that his conduct in representing himself required the court to reevaluate his competency. Statutorily, a "district court shall conduct a competency hearing and/or order the defendant to undergo a psychiatric evaluation 'if there is *reasonable cause* to believe that the defendant may presently be suffering from a mental disease or defect rendering him *mentally incompetent*.'" *Bernard*, 708 F.3d at 593 (emphasis added) (quoting 18 U.S.C.

12

§ 4241(a)).[3]  And Ziegler suggests that the court should have sua sponte considered mental illness as part of the competency inquiry.

We generally review a district court's inquiry and determination of "reasonable cause" to believe a defendant is mentally incompetent for abuse of discretion.  *United States v. Banks*, 482 F.3d 733, 742 (4th Cir. 2007).  But we have applied plain-error review when a defendant failed to raise his competence during a *Faretta* hearing[4] while the defendant was represented by counsel.  *Bernard*, 708 F.3d at 588 & n.7.  As a result, we also applied plain-error review in determining whether there was "reasonable cause" to inquire into competency under § 4241(a).  *Id*. at 592.  Where a defendant is not represented because counsel has withdrawn, however, we do not require a pro se defendant to raise issues with his own competency as he seeks to represent himself.  *Ductan*, 800 F.3d at 647–48.

Applying plain error in this arena is the subject of thoughtful debate and has led to a circuit split.[5]  But whatever the first-principles answer, we must apply plain error when

---

[3] While Ziegler fails to cite § 4241(a) in his brief, the heart of his claim is that the district court should have done more to ensure that Ziegler was not mentally incompetent to waive his right to counsel—a right that § 4241(a) was enacted to protect.  *See United States v. General*, 278 F.3d 389, 396 (4th Cir. 2002).

[4] A *Faretta* hearing "seeks to determine whether the accused, who is seeking to manage his own defense, understands the consequences of waiving his Sixth Amendment right to counsel and is relinquishing that right knowingly and intelligently."  *United States v. Cohen*, 888 F.3d 667, 672 n.2 (4th Cir. 2018).

[5] Judge Diaz noted this split in his dissent in *Bernard* and argued that for the defendant to preserve the competency issue "in the manner the majority expects, [the defendant] would have had to (1) recognize his own mental infirmities, and (2) object to his own motion to proceed pro se."  708 F.3d at 595 (Diaz, J., dissenting); *see also United*

13

a defendant did not raise competency issues while represented by counsel. *Bernard*, 708 F.3d at 588 n.7; *see also Ductan*, 800 F.3d at 647–48. And Ziegler was represented during the initial *Faretta* hearing. The public defender vouched for Ziegler's competency during that hearing and then again just before trial. J.A. 19–24, 311–19. No one ever questioned Ziegler's competence: not during the *Faretta* hearing, where Ziegler was represented by the public defender, and not during trial, where the public defender served as stand-by counsel. So our precedent suggests we review only for plain error. *See United States v. Olano*, 507 U.S. 725, 732 (1993).

Even so, we need not mechanically apply plain-error review. For while standards of review are generally unwaivable in the Fourth Circuit, we appear to retain some discretion in applying plain-error review. *See United States v. Venable*, 943 F.3d 187, 191–92, 192 n.8 (4th Cir. 2019). We have declined to apply plain error where the government only raised it at the "eleventh-hour," denying the opposing party the chance to

---

*States v. Erskine*, 355 F.3d 1161, 1166–67 (9th Cir. 2004). This has some intuitive appeal. Should we expect a mentally ill person seeking to represent himself to raise his own mental illness as a reason to reject his request to waive counsel? And what about a claim that the defendant's conduct after counsel was relieved required the court to sua sponte inquire into competency under § 4241(a)?

But another side exists. *See United States v. Modena*, 302 F.3d 626, 630 (6th Cir. 2002). And as the majority in *Bernard* points out, "we look to not only the defendant, but to his counsel, who for much of the hearing actively participated with full representational authority." 708 F.3d at 588 n.7. Counsel generally has a duty of candor to alert the court to concerns with his client's competency. *Cf.* Monroe H. Freedman, *Professional Responsibility of the Criminal Defense Lawyer: The Three Hardest Questions*, 64 MICH. L. REV. 1469 (1966). So the failure to raise competency leads to plain-error review. This may even apply after the hearing when the court has appointed stand-by counsel, as the court is less likely to look for such issues.

meaningfully respond. *United States v. Ashford*, 718 F.3d 377, 380 (4th Cir. 2013); *Venable*, 943 F.3d at 191–92, 192 n.8.[6]

Here, nobody mentioned waiver or plain-error review on appeal. But we need not determine whether we may exercise our discretion to forgo plain-error review because the standard of review does not change the outcome. As we will see, the district court did not abuse its discretion in handling Ziegler's waiver of counsel. There is thus no error, much less a plain error. *See United States v. Alvarado*, 816 F.3d 242, 249 (4th Cir. 2016) (finding, in a different context, that the district court's decision could not "be found to be an abuse of discretion, let alone plain error"); *United States v. McBride*, 362 F.3d 360, 366 (6th Cir. 2004) (refusing to resolve the appropriate standard in this context because failing under abuse of discretion also meant the defendant failed under plain error).

With the best vantage point to evaluate competency, a district court retains significant discretion in how to address a defendant's request to waive the right to counsel. *Singleton*, 107 F.3d at 1097. And no precise formula binds district courts when evaluating the competency to waive the right. *Id.* Our decision in *United States v. King*, 582 F.2d 888 (4th Cir. 1978), is instructive. There, the district court did not inquire into the

---

[6] We have not clearly determined whether a party may waive a waiver argument by not raising it in their briefs. *But cf. United States v. Carthorne*, 726 F.3d 503, 509 n.5 (4th Cir. 2013) (concluding that the government had "defaulted any potential argument that Carthorne had entirely waived review of" the issue of whether his crime was a crime of violence). Other circuits have held that waiver can be waived. *See, e.g.*, *United States v. Bonilla–Mungia*, 422 F.3d 316, 319 & n.1 (5th Cir. 2005); *Tokatly v. Ashcroft*, 371 F.3d 613, 618 (9th Cir. 2004); *Riemer v. Ill. Dep't of Transp.*, 148 F.3d 800, 804 n.4 (7th Cir. 1998); *United States v. Quiroz*, 22 F.3d 489, 491 (2d Cir. 1994); *United States v. Beckham*, 968 F.2d 47, 54 n.5 (D.C. Cir. 1991). And we allow parties to waive waiver clauses in plea agreements. *See United States v. Metzger*, 3 F.3d 756, 757–58 (4th Cir. 1993).

defendant's mental health and allowed him to represent himself despite his bizarre statements and insanity defense. *Id*. at 890. The defendant argued that the court erred in not delving "deeply into the educational background, age and general capabilities of the accused." *Id*. We rejected this argument: "no particular form of interrogation is required" as long as "'the defendant [is made] aware of the 'dangers and disadvantages of self-representation,' so that the defendant 'knows what he is doing and his choice is made with his eyes open.'" *Id*. (quoting *Faretta*, 422 U.S. at 835). This is because, in part, the trial judge "will often prove best able to make more fine-tuned mental capacity decisions, tailored to the individualized circumstances of a particular defendant." *Edwards*, 554 U.S. at 177.

Considering *King*, the district court's colloquy before accepting Ziegler's waiver suffices. The district court ensured that Ziegler knew the charges against him, understood the process, knew his rights, had some experience in the law, was warned that proceeding pro se was a bad idea, and understood the consequences of waiving his right to counsel and proceeding on his own. J.A. 25–39; *see King*, 582 F.2d at 890 (The "court must assure itself that the defendant knows the charges against him, the possible punishment and the manner in which an attorney can be of assistance."). Given the court's personal observations of Ziegler, the district court did enough to evaluate Ziegler's competency.[7]

---

[7] *See Demosthenes v. Baal*, 495 U.S. 731, 735–37 (1990) (per curiam) (noting that the trial court observed and questioned the defendant in determining his competence); *Maggio v. Fulford*, 462 U.S. 111, 117–18 (1983) (per curiam) (upholding trial court's decision to place little weight on a psychiatric evaluation and to rely instead on its observations of the defendant to reject a requested competency hearing).

16

Nor does the record reflect that the court abused its discretion in not finding "reasonable cause" to believe Ziegler was mentally incompetent under § 4241(a). During the waiver-of-counsel hearing, Ziegler continually asserted that he was "not incompetent to handle [his] own affairs" and explained his experience with the law and judicial system. J.A. 22–23. In doing so, he explained that he had various motions he wanted to file, that they were Shepardized, that he knew cases and jury instructions in the area, explained some of his rights, claimed that he had a degree in criminal justice, knew all 27 amendments, had helped prisoners and been involved in several cases, said he knew the rules of evidence and listed several (noting that states had similar rules), listed several writs, and asserted that he understood criminal procedure. While not always accurate, Ziegler's statements reflected his ability to consider legal concepts and strategy, even if those concepts and strategies were ill-advised. And though legal ability is not necessary to be competent to waive the right to counsel, that ability serves as evidence that Ziegler had both the capacity to consult with a lawyer and a rational understanding of the case against him, all that is required to allow a defendant to waive counsel and realize his right to self-representation. *Banks*, 482 F.3d at 743; *see also United States v. Perez*, 603 F.3d 44, 47 (D.C. Cir. 2010).

Moreover, Ziegler's appointed public defender made it clear to the court that he thought Ziegler was "competent to proceed forward" and represent himself because he did not have "any questions with his legal competency." J.A. 19.[8] And it is well within a

---

[8] The public defender: "So given the, the base of experience that he's indicated to me that he's had in either representing himself or helping others in, in different legal situations, he thinks he is competent to proceed forward. I don't have any questions with

17

district court's discretion to consider, or not, defense counsel's opinion on the competency and mental health of his client. *Perez*, 603 F.3d at 48; *United States v. Muriel-Cruz*, 412 F.3d 9, 11, 13 (1st Cir. 2005). So, at this early stage, the district court could rely on the public defender as someone with firsthand experience with the defendant. *United States v. Malmstrom*, 967 F.3d 1, 5–6 (1st Cir. 2020).

One issue warrants specific discussion. Ziegler claimed that he represented himself in Michigan and got his conviction reversed on appeal as proof of his legal prowess. But the court discovered that he was represented on appeal and that his conviction was reversed because his waiver of counsel was held invalid. This sequence rightfully caused the district court to ask whether Ziegler was planning to proceed pro se and later claim his waiver was improper. Ziegler promised that this was not his intention, though it has turned into his action. But the Michigan conviction was overturned on a state procedural error, not incompetency. *See Ziegler*, 1998 WL 1988750, at *1–2. Ziegler's comments admittedly reflect an inaccuracy at best or an attempt to mislead the court at worst. Even so, nothing about that case, nor about the way Ziegler presented it to the district court, created cause to believe Ziegler was mentally incompetent. Not every misleading claim or lack of knowledge suggests mental illness, and "not every manifestation of mental illness demonstrates incompetence to stand trial" or to waive the right to counsel. *Burket v. Angelone*, 208 F.3d 172, 192 (4th Cir. 2000) (quoting *U.S. ex rel. Forester v. DeRobertis*, 741 F.2d 1007, 1012 (7th Cir. 1984)).

---

his legal competency at this point. He has provided me with a list of pre-trial motions that he would like to file." J.A. 19.

Even though no cause existed to require an additional inquiry when Ziegler initially waived counsel, § 4241(a) imposes an ongoing duty to evaluate whether there is "reasonable cause" to inquire into a defendant's competency. But nothing that followed the waiver required the district court to find that there was that "reasonable cause." Before trial, Ziegler lost several pretrial motions and made some bizarre arguments. Yet "neither low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence." *Burket*, 208 F.3d at 192. And there was evidence supporting the district court's decision that "reasonable cause" did not exist. Before trial, the prosecutor and the court raised competency, and everyone agreed Ziegler should be allowed to continue. Again, the public defender made it clear that the court had found Ziegler competent, that Ziegler had shown that he knows how the system works and has experience, and that Ziegler wanted to represent himself. So the public defender encouraged the court to respect Ziegler's right to self-representation. By this point, the court had had repeated interactions with Ziegler and found no reasonable cause "to refer Mr. Ziegler for any kind of a study." J.A. 316. This decision was not an abuse of discretion. *See Banks*, 482 F.3d at 743 ("We defer so to the district court because it is in a superior position to adjudge the presence of indicia of incompetency constituting reasonable cause to initiate a hearing [under § 4241(a)].").

Ziegler's performance during trial only confirmed his competency. Ziegler gave an opening and closing argument, conducted far-reaching cross-examinations, introduced evidence, including three witnesses, and won several objections. While Ziegler continued to make some bizarre statements and mistakes, those occurrences related more to a lack of

19

training and experience, which is to be expected of any non-lawyer, than to concerns about competency.  In fact, Ziegler did quite well for someone proceeding pro se.  His apparent ability to consider strategic choices, develop a defense strategy, and operate in the courtroom is all evidence of competence to both stand trial and waive the right to counsel. *Perez*, 603 F.3d at 47–48.

Still, Ziegler contends that his grandiose statements about his legal acumen, his combative approach to witnesses, his bizarre questions and theories, and his arguments with the court should have raised red flags.  We disagree.  Many great trial lawyers are combative and a bit full of themselves, if not outright narcissists.  And "persons of unquestioned competence have espoused ludicrous legal positions." *United States v. James*, 328 F.3d 953, 955 (7th Cir. 2003).  Section 4241(a) does not require a competency hearing any time a defendant is combative, conceited, or committed to a "frivolous legal strategy." *Banks*, 482 F.3d at 743; *see also Perez*, 603 F.3d at 47–48.

We rejected this very argument in *Bernard*:  "[D]efendants who choose to represent themselves often do so because they believe they are more capable than trained attorneys to conduct their own defense."  708 F.3d at 591.  That belief is rarely true.  It was not true in *Bernard*, as the defendant made "bizarre or irrational" statements and failed to object, call witnesses, cross some witnesses, or otherwise "think like a lawyer." *Id*. at 593.  Even so, we affirmed the district court's decision to allow self-representation, affording the court "wide latitude" "because district courts are in the best position to make competency determinations, which at bottom rely not only on a defendant's behavioral history and

20

relevant medical opinions, but also on the district court's first-hand interactions with, and observations of, the defendant and the attorneys at bar." *Id*.

Ziegler performed much better than Bernard. Though far from the quality of representation his public defender would have provided, Ziegler showed a reasonable degree of knowledge, competence, and experience in legal matters.

The first time Ziegler mentioned mental illness was after the jury found him guilty. And the district court reasonably discounted Ziegler's claims for having been raised only after the jury verdict. *See Bernard*, 708 F.3d at 593 ("Appellant's mental state did not show marked decline until the sentencing hearing."). We agree that these late claims of mental illness failed to create a reasonable cause to believe that mental disease rendered him mentally incompetent. Based on the court's observations of Ziegler during the proceedings, Ziegler's earlier statements about experience and competency, and the public defender's representations, we find no error in how the district court handled Ziegler's waiver of counsel and competency.

### B. There was sufficient evidence that Ziegler "acted" as a federal officer

Ziegler also challenges the sufficiency of the evidence for his two convictions under 18 U.S.C. § 912. In particular, he claims the evidence failed to show that he "acted" as a federal official. To show a violation of § 912, the government must prove four elements beyond a reasonable doubt: (1) that the defendant was not an officer or employee of the United States; (2) that the defendant falsely pretended to be an officer or employee of the United States; (3) that the defendant *acted as such* or *demanded or obtained a thing of value*; and (4) that the defendant did so knowingly and willfully. *United States v. Roe*, 606

21

F.3d 180, 186 (4th Cir. 2010). Ziegler argues that while he did falsely claim to be an Assistant United States Attorney, he did not "act as such" because his statements were just a crazy person's ramblings that did not and were not meant to change anyone's behavior or get anything of value. While perhaps a close question for a jury, our review is more circumscribed. Through this confined lens, we find that sufficient evidence existed for a reasonable jury to convict.

Although we "review challenges to the sufficiency of evidence de novo," "'our role is limited to considering whether there is substantial evidence, taking the view most favorable to the Government, to support' the conviction." *United States v. Kelly*, 510 F.3d 433, 440 (4th Cir. 2007) (quoting *United States v. Beidler*, 110 F.3d 1064, 1067 (4th Cir. 1997)). "[S]ubstantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (en banc). "We do not reweigh the evidence or the credibility of witnesses, but assume that the jury resolved all contradictions in the testimony in favor of the Government." *Roe*, 606 F.3d at 186. This high burden reflects our reluctance to overturn the jury's verdict in all but the most egregious cases.

Here, showing Ziegler "acted" as an officer or employee of the United States requires more than pretense, puffery, or plain representation. *Id*. at 188; *see also United States v. Rosser*, 528 F.2d 652, 657–58 (D.C. Cir. 1976). Proving that Ziegler made some show of authority or held himself out as an officer to cause other individuals to change their behavior or police to conduct more investigation, however, is sufficient.

Consider our decision in *Roe*, 606 F.3d at 188–89. There, a private security guard contracted by NASA had arrest authority only on NASA property. *Id*. at 187. But while off property, he flashed his lights and told a state officer to slow down on a state road. *Id*. at 188–89. When Roe was pulled over, he ignored the officer's orders, repeated that he was a "federal police officer," and approached the officer to show his NASA badge. *Id*. at 182–83. We held that this was sufficient evidence because "Roe engaged in actions that sought to assert the authority of a federal police officer and which 'backed up' his statement . . . that he was a federal police officer," such as turning on his sirens, telling the officer to slow down, repeatedly claiming to be an officer rather than obeying orders, and showing a badge. *Id*. at 188–89.

*Roe* in turn relied on *United States v. Parker*, 699 F.2d 177 (4th Cir. 1983), where Parker, while purchasing firewood, falsely told a salesman that he was an IRS agent investigating the salesman for tax fraud. *Id.* at 177–78. The salesman eventually sold Parker firewood at the salesman's regular asking price, meaning Parker did not "gain any material advantage from" the salesman. *Id.* The salesman, after the encounter, reported Parker's claims to the IRS. *Id*. at 178. An IRS investigator then called Parker impersonating the salesman and expressing his concern over the investigation. *Id*. Parker claimed that the investigation was closed, that there would be no audit, and that he regretted mentioning the investigation. *Id*. We found this was enough to sustain a conviction under § 912 because Parker "asserted he was investigating" the salesman for fraud. *Id*. at 179. Though merely claiming to be an agent would not have been sufficient, we held that Parker's claims "went beyond nonculpable false pretense" because Parker claimed he was

23

*investigating* the salesman. *Id*.; *see also United States v. Martindale*, 790 F.2d 1129, 1135 (4th Cir. 1986) (upholding § 912 conviction where a defendant falsely claimed to be a U.S. State Department employee, presented a fraudulent diplomatic passport, and requested a rental car discount from a Hertz Rent-A-Car agent).

*Parker*, in turn, cited several out-of-circuit cases favorably. In one Fifth Circuit case, a defendant acted as an official by "signing the register at a federal penitentiary as the associate attorney general and representing to an inmate that he was the associate attorney general" even though he solicited nothing. *Parker*, 699 F.2d at 179–80 (citing *United States v. Cohen*, 631 F.2d 1223 (5th Cir. 1980)). In an Eighth Circuit case, it was sufficient that a person claiming to be an FBI agent displayed his pistol, handcuffs, and badge even though he never tried to arrest anyone or get private information. *Id*. at 180 (citing *United States v. Robbins*, 613 F.2d 688 (8th Cir. 1979)). "Similarly, the defendant in *United States v. Hamilton*, 276 F.2d 96 (7th Cir. 1960), was held to have acted as the FBI agent he claimed to be simply by wearing a sidearm in plain view around his boarding house." *Id*. Other cases have affirmed convictions under § 912 where an individual claimed to be an official to police and that claim caused the police to conduct additional investigations. *See, e.g.*, *United States v. Gilbert*, 143 F.3d 397, 399 (8th Cir. 1998) (finding that the evidence was sufficient to convict under § 912 when the defendant told officers during a speeding stop that he was a customs official, requiring the officers to ask additional questions and call the United States Customs Service, a "course [they] would not have pursued but for the deceitful conduct").

24

Considering these prior decisions, we find that a reasonable jury could have found sufficient evidence that Ziegler "acted" as an Assistant United States Attorney when he continually told police officers and court officials that the charges brought against him would be dismissed because he was an Assistant United States Attorney. First, Deputy Thomas testified that Ziegler refused to consent to a blood draw because "he didn't have time for all this" and "he would rather just go to jail because all of the charges" would be "dropped." J.A. 358–59. Ziegler also told the officer that he had "been stopped numerous times, but every time" the charges had been "dismissed." J.A. 359. Deputy Thomas testified that Ziegler said those charges were dropped and any charges West Virginia would bring against Ziegler from the traffic stop would also be dropped because "he was an Assistant U.S. Attorney and he was here working for Mike Stuart." *Id*.

Second, he told both officers that they did not have jurisdiction over him and that he did not need a license based on Supreme Court cases and several statutes. When the deputies asked Ziegler why the deputies did not have authority over him, Deputy Morris testified that Ziegler said he was "an Assistant U.S. Attorney and he knew Mike Stuart." J.A. 450. Deputy Thomas testified that Ziegler was doing this "[t]o show authority and dominance to prevent being arrested." J.A. 361. According to the state prosecutor, Deputy Morris quickly contacted him and seemed "nervous," in part because Ziegler was claiming to be an Assistant United States Attorney, quoting federal law, and saying that the charges "wouldn't stick." J.A. 571–72. In sum, Ziegler claimed to be an Assistant United States Attorney and told police officers that, as a result of this position, the officers lacked jurisdiction over him and were wasting their time, the charges would get dismissed, and he

25

did not need a license.  This is a sufficient show of authority to "act" as an official. *Parker*, 699 F.2d at 177–78.

Third, during his arraignment, he told the magistrate's assistant that he was an Assistant United States Attorney and should not be there, which she felt was "intimidating like he should not be there because he had a little bit of power."  J.A. 483.  Before Magistrate Rider, Ziegler continually claimed to be a federal prosecutor, said he would not be there long, he would get the case transferred, and he would see Mike Stuart and "get all this worked out."  J.A. 452, 515.  Consistently claiming to be an Assistant United States Attorney and claiming to call the United States Attorney to get a case dismissed is a greater show of authority than merely wearing a sidearm and constitutes "acting" as an official. *Hamilton*, 276 F.2d at 98.

Ziegler argues that he never resisted the officers like in *Roe* and that these were just statements of hope that the charges would be dropped.  But viewed in the light most favorable to the Government, a reasonable jury could credit the officers' impressions and testimony that Ziegler was claiming to be an Assistant United States Attorney to exert pressure on them and get them to drop the charges.  And that is enough to meet the element of "acting" as an official.

A reasonable jury could also find sufficient evidence on the second count that Ziegler acted as an Assistant United States Attorney by trying to get a thing of value, the return of his impounded car.  When the tow-company owner asked Ziegler to show his license and other documents to prove he owned the car, Ziegler claimed he did not need a license because he was a "federal prosecutor" and a sovereign citizen.  J.A. 546.  Ziegler

26

refused to provide any documents and demanded his car back, getting increasingly belligerent. J.A. 546–48.

A frustrated Ziegler then proclaimed, "I am a federal prosecutor," telling the owner, "[y]ou are going to be named in my lawsuit that I'm filing" while saying, "I want my vehicle." J.A. 548. Viewed in the light most favorable to the Government, a reasonable jury could conclude that Ziegler was claiming to be an Assistant United States Attorney and threatening the owner with a lawsuit to pressure her as a layperson with his claimed authority to get his car back. It is true that Ziegler may bring a lawsuit without being a federal prosecutor, but to a layperson, threatening a suit right after claiming to be a federal prosecutor could easily be taken as a threat of prosecution and thus a show of authority. A reasonable jury, therefore, could find sufficient evidence from Ziegler's interactions with the tow-shop owner to determine that he "acted" as an official in his dealing with her.

But Ziegler's actions did not end there. Ziegler then went to the state prosecutor's office and demanded his car back, claiming the officers were violating his rights. The state prosecutor explained he could not speak with Ziegler without an attorney. But Ziegler continued claiming to be an Assistant United States Attorney who could represent himself. And Ziegler asked the state prosecutor to help get his car back. As a result, the state prosecutor decided to investigate Ziegler's claims and contacted the United States Attorney's office. They confirmed that he was not an Assistant United States Attorney and began their own investigation. As noted, causing officials to investigate a claim of authority just as the state prosecutor did here has been enough to uphold the "acting as such" element. *See Gilbert*, 143 F.3d at 399. A reasonable jury could conclude that

27

Ziegler's claims of being an Assistant United States Attorney in connection with asking for his car back sought to exert pressure and influence in order to get a thing of value.

For both charges, a reasonable jury could find Ziegler's repeated statements to be more than harmless bravado or puffery. Rather, viewed in the light most favorable to the Government, a jury could find that Ziegler was falsely using a position to pressure people. This suffices to find that Ziegler "acted" as an Assistant United States Attorney for both charges.

*          *          *

"A trial court evaluating a defendant's request to represent himself must 'traverse . . . a thin line' between improperly allowing the defendant to proceed pro se, thereby violating his right to counsel, and improperly having the defendant proceed with counsel, thereby violating his right to self-representation." *Fields v. Murray*, 49 F.3d 1024, 1029 (4th Cir. 1995) (en banc) (quoting *Cross v. United States*, 893 F.2d 1287, 1290 (11th Cir. 1990)). Ziegler's conduct in his prior case and here exemplifies the difficult dance that district courts must perform in zealously guarding the rights of a defendant who wants to represent himself. But at least here, the court stayed close enough to the line to have not abused its discretion.

In addition, a reasonable jury could find that Ziegler "acted" as an official when he told several deputies and court officials that they had no jurisdiction over him and the charges would be dismissed because he was an Assistant United States Attorney. A jury could also find sufficient evidence that Ziegler "acted" as an official to get something of

28

value when he told the towing company owner and the prosecutor that he was an Assistant United States Attorney and demanded his car back.  So we

AFFIRM.