**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 23-4072

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JAMIE CHRISTOPHER HENDERSON,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington.  Louise W. Flanagan, District Judge.  (7:20-cr-00088-FL-1)

Argued:  May 8, 2024                                        Decided:  July 9, 2024

Before AGEE and THACKER, Circuit Judges, and TRAXLER, Senior Circuit Judge.

Affirmed by published opinion. Senior Judge Traxler wrote the opinion, in which Judge Agee and Judge Thacker joined.

**ARGUED:**  Paul K. Sun, Jr., ELLIS & WINTERS, LLP, Raleigh, North Carolina, for Appellant.  Lucy Partain Brown, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.  **ON BRIEF:**  Kelly Margolis Dagger, ELLIS & WINTERS LLP, Raleigh, North Carolina, for Appellant.  Michael F. Easley, Jr., United States Attorney, David A. Bragdon, Assistant United States Attorney, John L. Gibbons,

Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

————————

TRAXLER, Senior Circuit Judge:

Jamie Christopher Henderson ("Henderson") appeals his convictions and sentence following a jury trial for conspiracy to distribute cocaine and cocaine base, possession with intent to distribute cocaine base, and possession of firearms in furtherance of his drug trafficking crimes. Henderson argues that the evidence was insufficient to support these convictions, and that his sentence is procedurally and substantively unreasonable. We affirm.

## I.

On April 30, 2019, law enforcement officers with the Robeson County, North Carolina, Sheriff's Office executed a search warrant at Henderson's residence. Just prior to the arrival of the officers, a blue car pulled into the front yard of the residence and Henderson walked out to it. As the officers approached the residence, they witnessed Henderson open his hand and toss items underneath the vehicle, including a gun that he retrieved from his back pocket or waistband. The officers recovered a loaded .45 caliber Glock handgun, a plastic bag with 2.61 grams of powder cocaine and 3.37 grams of crack cocaine, a cigarette lighter, and a glass crack pipe from underneath the vehicle. Henderson was placed under arrest. Two men fled from the rear of the trailer when the officers arrived.

Inside the trailer, a third man, who was legally blind, was lying on the couch with a loaded AR-15 style rifle next to him. Police found a loaded handgun, cocaine powder and crack cocaine in a toilet tank, and a second loaded handgun was found in the bottom of a kitchen trash can. Police also seized three digital scales, one of which contained white powder residue, and a digital video recorder containing footage from security cameras

located on the exterior of the residence. The videos spanned the week prior to Henderson's arrest and depicted Henderson and other men, armed with multiple handguns and an AR-15 style rifle, standing in the front yard of the residence as cars and people would approach it. On one occasion, Henderson is seen repeatedly aiming an AR-15 style rifle at a vehicle approaching the residence. Other video clips depict an armed Henderson distributing crack cocaine to various men through the backdoor of the residence, while another man is positioned strategically to ensure that he is behind the customer during the transaction. Still other clips show Henderson on the front porch of the residence conducting drug sales. Henderson, who is often seated at a table, is seen measuring drugs on a scale, selling drugs to customers with an easily accessible handgun placed on the table in front of him, and counting money.

A few months after his arrest, Henderson sent word through his sister that he wanted to speak with Major Damien McLean, a deputy sheriff with the Robeson County Sheriff's Office, who was married to one of Henderson's family members. After executing *Miranda* and Sixth Amendment waiver forms, Henderson provided a videotaped statement to Major McLean and Lieutenant Terry Sampson, who was also with the Robeson County Sheriff's Office. During the interview, Henderson confessed to being a drug trafficking "middleman" in a cocaine distribution ring that had been operating in the Robeson County area from 2015 until his arrest in 2019. He identified several of his suppliers and told the officers that he had obtained a total of approximately 25 kilograms of cocaine from the suppliers during this time period. After one of his suppliers ("Leon, Jr.") introduced him to a drug trafficker by the name of "Red Cloud," Henderson cut Leon, Jr., out of the chain

and began dealing primarily with Red Cloud. Henderson admitted that he was dealing in "major weight" drugs that he first obtained from Red Cloud and, if Red Cloud didn't have the drugs, he would go to the other local suppliers. Henderson stated that he had obtained approximately 20 kilograms of cocaine from Red Cloud alone. When asked how he became a middleman in the operation, Henderson stated that he would "get out and network" in various places in the area. J.A. 486. Detective Sampson had worked in the Narcotics Division at the Robeson County Sheriff's Office for more than ten years and was assigned to the ATF Task Force. He was personally familiar with Red Cloud, as well as at least six of the other named drug suppliers and traffickers, and he confirmed that Henderson had accurately identified the suppliers and their locations.

Henderson remained in custody after his arrest, during which time he wrote an incriminating letter to his brother that was intercepted by jail personnel and turned over to the prosecution. Among other things, Henderson tells his brother that "I could easy have been a rat and told on everybody, but I'm going to trial." J.A. 294. He asks his brother to get "Chandler and Dusty and Nick" to "say that I did not live" in the trailer and "then [the] case will be dismissed. They cannot go back and charge anyone." J.A. 294. He goes on to state that he "know[s] Nick and them gonna step up for me." J.A. 294.

A grand jury returned a five-count superseding indictment against Henderson, charging him with: (1) conspiracy to distribute five kilograms or more of cocaine and a quantity of cocaine base, from 2015 and continuing until on or about April 30, 2019, in violation of 21 U.S.C. § 841(a) and 21 U.S.C. § 846 (Count One); possession of a firearm, in furtherance of the drug-distribution conspiracy, in violation of 18 U.S.C. § 924(c)(1)(A)

5

(Count Two); possession with intent to distribute a quantity of cocaine and a quantity of cocaine base, on or about April 30, 2019, in violation of  21 U.S.C. § 841(a)(1) (Count Three); possession of a firearm in furtherance of the possession-with-intent offense, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Four); and possession of a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1) (Count Five).  Henderson pleaded not guilty.

At trial, the Government presented, *inter alia*, the testimony of the law enforcement officers, Henderson's videotaped confession, the security footage from the trailer, and the letter Henderson had written to his brother.  Henderson presented the testimony of his mother and daughter who claimed that Henderson was a drug user, thief, and liar—but not a drug dealer.

The jury convicted Henderson on all counts.  On the Count One conspiracy offense, the jury found Henderson accountable for less than 500 grams of cocaine and a quantity of cocaine base (crack).  On the Count Three offense, the jury found Henderson guilty of possession with intent to distribute cocaine base (crack) only.  Following a two-day sentencing hearing, the court imposed a below-Guidelines sentence of 324 months imprisonment—which was comprised of 120 months on Counts One and Three, concurrent; 60 months on Count Two, consecutive; 60 months on Count Four, consecutive; and 84 months on Count Five, consecutive.  The court also imposed terms of supervised release for each count.  On appeal, Henderson challenges his convictions and sentences on Counts One through Four.[1]

---

[1] Henderson has not argued that his conviction on Count Five should be reversed.

II.

"A defendant who challenges the sufficiency of the evidence faces a heavy burden." *United States v. Small*, 944 F.3d 490, 499 (4th Cir. 2019) (cleaned up). "Although we review challenges to the sufficiency of the evidence de novo, our role is limited to considering whether there is substantial evidence, taking the view most favorable to the Government, to support the conviction." *United States v. Ziegler*, 1 F.4th 219, 232 (4th Cir. 2021) (cleaned up). "Substantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *Id.* "[A]ppellate reversal on grounds of insufficient evidence is confined to cases where the prosecution's failure is clear." *United States v. Savage*, 885 F.3d 212, 219 (4th Cir. 2018) (cleaned up).

A.

We begin with Henderson's challenge to his Count One conspiracy conviction and its accompanying Count Two firearms charge. To prove the charged conspiracy, the government was required to establish that "(1) an agreement to distribute and possess cocaine [or cocaine base] with intent to distribute existed between two or more persons; (2) [Henderson] knew of the conspiracy; and (3) [Henderson] knowingly and voluntarily became a part of the conspiracy." *United States v. Hackley*, 662 F.3d 671, 678 (4th Cir. 2011) (cleaned up). The underlying "agreement need not be formal and may instead be a tacit or mutual understanding between the defendant and his accomplice." *United States v. Gomez-Jimenez*, 750 F.3d 370, 378 (4th Cir. 2014) (cleaned up). "[E]vidence of continuing relationships and repeated transactions can support the finding that there was a

7

conspiracy, especially when coupled with substantial quantities of drugs," *United States v. Reid*, 523 F.3d 310, 317 (4th Cir. 2008).  And while "[a] mere buyer-seller relationship is insufficient to support a conspiracy conviction," such evidence is relevant and probative "on the issue of whether a conspiratorial relationship exists." *United States v. Howard*, 773 F.3d 519, 525-26 (4th Cir. 2014).

Henderson argues that the district court erred by denying his motion for judgment of acquittal on Counts One and Two because his confession was insufficient as a matter of law to prove his involvement in a drug trafficking conspiracy and, in his view, the government failed to offer the  independent corroborating evidence of conspiracy necessary to support a conviction.  He claims that his confession was false and that the evidence presented by the government was at most sufficient to prove buyer-seller relationships, but not a conspiracy to deal in drugs.  We are unpersuaded.

"'[I]t is a settled principle of the administration of criminal justice in the federal courts that a conviction must rest upon firmer ground than the uncorroborated admission or confession of the accused' made after commission of a crime." *United States v. Abu Ali*, 528 F.3d 210, 234 (4th Cir. 2008) (quoting *Wong Sun v. United States*, 371 U.S. 471, 488-89 (1963)).  "This is so because the doubt persists that the zeal of the agencies of prosecution to protect the peace or the aberration or weakness of the accused under the strain of suspicion may tinge or warp the facts of the confession." *Id.* (cleaned up).  Courts, therefore, "require corroboration to prevent confessions to crimes never committed and convictions based upon untrue confessions alone." *Id.* (cleaned up).

8

Nonetheless, "the Supreme Court has cautioned that since this corroboration rule infringes on the province of the primary finder of facts, its application should be scrutinized lest the restrictions it imposes surpass the dangers which gave rise to them." *Id.* at 234-35 (cleaned up). "[T]he government must introduce substantial independent evidence which would tend to establish the trustworthiness of the defendant's statement," but the "corroborative evidence need not be sufficient, independent of the defendant's incriminatory statements, to establish the *corpus delicti*." *Id.* at 235 (cleaned up). Thus, "it is sufficient if the corroboration *supports*—not establishes—the essential facts admitted," and the "corroboration need only *tend* to establish—not establish—the trustworthiness of the confession." *Id.* at 237.

Relying primarily upon our decision in *United States v. Stephens*, 482 F.3d 669 (4th Cir. 2007), Henderson argues that his confession to being a middleman and networker in the Robeson County drug conspiracy was not sufficiently corroborated. We are unpersuaded.

In *Stephens*, the defendant was taken into custody after a police officer heard gunshots on a nearby street and apprehended the defendant after he ran from the officer. The defendant later told ATF officers that a local dealer by the name of "Red" had fronted him cocaine months before, which he had not paid for, and that the dealer planned to kill him. He claimed he fired the shots that day because someone in Red's white Mazda vehicle fired at him first. The defendant was charged with conspiracy to distribute cocaine and using, carrying and discharging a firearm in relation to the drug trafficking crime. However, the only evidence presented at trial to corroborate the defendant's confession

9

was an ATF agent's testimony that he was aware of a suspected drug dealer by the name of "Red" who drove a white Mazda. We vacated the defendant's convictions because there was insufficient corroborating evidence to establish that the defendant and Red "were engaged in a conspiracy to sell cocaine," and no "corroborating evidence to establish that [defendant] was engaged in the drug trade" as he had claimed. *Id.* at 673.

Here, in contrast, there was abundant independent evidence that Henderson was engaged in a large-scale drug trade, which supported the trustworthiness of his confessions. Henderson named multiple drug suppliers in the Robeson County area from whom he had obtained drugs to sell to others. He also identified their residences or other locations from which they operated. Detective Sampson, in connection with his work in the Narcotics Division of the Robeson County Sheriff's Office and with the ATF drug task force, was personally familiar with many of the named dealers and corroborated the accuracy of Henderson's descriptions of the dealers and their locations. But that was not all. The jury also watched six days of video leading up to the April 30 search and arrest showing multiple acts that also supported the trustworthiness of Henderson's admissions. The jury saw an armed Henderson, supported and protected by other armed men, aggressively defending the property—and the drug dealing going on there—against approaching vehicles and persons. Henderson is seen engaging in repeated drug transactions with multiple, different buyers, weighing drugs on scales, and selling drugs from both the front and the rear of the residence. These transactions occurred at various times of the day and night—and always under the protection of handguns or an AR-15 rifle, or both, and other men who were present at the residence. The evidence found during the April 30 search further

10

corroborates the trustworthiness of Henderson's confession that he was dealing in "major weight" drugs that he obtained from Red Cloud and the other local suppliers. J.A. 484. When officers pulled up on the residence, two men fled the rear of the residence and left the third, who was legally blind, on the sofa with the AR-15 rifle. The other handguns had been stashed in a toilet tank and trash can, along with more cocaine and crack cocaine, and three digital scales consistent with large-scale drug trafficking were discovered.

In light of the totality of the evidence presented to the jury, we have no trouble concluding that this independent evidence was sufficient to support the trustworthiness of Henderson's confession, and that the evidence as a whole was more than sufficient to prove beyond a reasonable doubt that Henderson was guilty of the conspiracy offense. Accordingly, we affirm Henderson's convictions on Count One and Count Two.

B.

Henderson also argues that the evidence was insufficient for the jury to convict him on Counts Three and Four, for possession with intent to distribute crack cocaine on April 30, 2019, and possession of a firearm in furtherance of his drug trafficking crimes. More specifically, Henderson argues that the evidence was insufficient for the jury to find that he intended to *distribute* the crack cocaine that he possessed on April 30, when the search warrant was executed, as opposed to personally consuming it.

"The offense of possession with intent to distribute requires the government to prove beyond a reasonable doubt that the defendant (1) knowingly (2) possessed a controlled substance (3) with the intent to distribute it." *United States v. Samad*, 754 F.2d 1091, 1096 (4th Cir. 1984). Again, Henderson "faces a heavy burden" to overturn the conviction.

11

*Small*, 944 F.3d at 499. "[T]his court must give full play to the jury to resolve testimonial conflicts, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts." *United States v. Dennis*, 19 F.4th 656, 665 (4th Cir. 2021) (cleaned up).

Drawing all such reasonable inferences from the evidence in favor of the government, we hold that there was sufficient evidence to support the jury's conviction. The security footage shows a blue car pulling into Henderson's driveway just before the officers arrived. Henderson walks towards the just-arrived car, with his left hand in his shorts pocket and a handgun on the right side of his body. As the officers pull into the driveway, Henderson pulls his left hand out of his pocket and opens it, pulls the handgun from his back pocket or waistband with his right hand, and tosses the items under the car. A plastic baggie containing crack cocaine and the Glock firearm were recovered from under the car. In addition to this evidence, the guns, drugs, scales, and videos showing an armed Henderson weighing crack cocaine and repeatedly selling the drug to approaching buyers, provides substantial circumstantial evidence from which the jury could reasonably infer that Henderson also intended to sell the crack cocaine that was in his pocket on April 30, 2019, to an occupant in the blue car, and that he possessed firearms in furtherance of his drug trafficking crimes. Accordingly, we also affirm Henderson's convictions on Count Three and Count Four.[2]

---

[2] As noted above, Henderson has made no specific challenge to his conviction for possession of a firearm as a felon (Count Five) and, to the extent he would argue otherwise, the evidence overwhelmingly supports this conviction as well.

III.

We now turn to Henderson's contention that the district court procedurally and substantively erred by imposing a 340-month term of imprisonment for his convictions.

In the presentence report (PSR), Henderson was found responsible for 25 kilograms of cocaine. This was calculated based upon the 20 kilograms he confessed to having purchased from Red Cloud alone, 90 ounces he purchased from two other named suppliers, 54 ounces he purchased from a fourth named supplier, and a kilogram he purchased from a fifth named supplier. He was also found responsible for 0.33 grams of methamphetamine and 16.13 grams of crack. This calculated drug quantity resulted in a base offense level of 32. Two points were added for Henderson's maintenance of the premises for the purpose of manufacturing or distributing controlled substances and two points were added for obstruction of justice, resulting in a total offense level of 36. Combined with his category VI criminal history, the Guidelines range for Counts One and Three alone was 324 to 405 months' imprisonment. The Guidelines range for Counts Two and Four was the mandatory minimum of 60 months each, consecutive to the other counts. And, for Count Five, 84 months was added. Accordingly, Henderson's total advisory Guidelines range was 444 to 525 months imprisonment. After conducting a two-day sentencing, the district court departed downward 120 months and imposed a total sentence of 324 months.

A.

"We review the reasonableness of a sentence under 18 U.S.C. § 3553(a) using an abuse-of-discretion standard, regardless of whether the sentence is inside, just outside or significantly outside the Guidelines range." *United States v. Nance*, 957 F.3d 204, 212 (4th

13

Cir. 2020) (cleaned up). We first "evaluate procedural reasonableness, determining whether the district court committed any procedural error, such as improperly calculating the Guidelines range, failing to consider the § 3553(a) factors, or failing to adequately explain the chosen sentence." *Id.* If the sentence is procedurally sound, we then consider the substantive reasonableness of the sentence, "tak[ing] into account the totality of the circumstances to determine whether the sentencing court abused its discretion in concluding that the sentence it chose satisfied the standards set forth in § 3553(a)." *Id.* (cleaned up).

Henderson argues that his 324-month sentence is procedurally unreasonable because it was based on an overstated drug quantity. More specifically, he argues that the district court erred in adopting the PSR's calculation of drug quantity because it was at least partially based on his confession, which he claims was unreliable. Henderson argued (and testified at the sentencing hearing) that he had exaggerated his involvement in the drug trafficking business when he confessed and, as support, relies upon evidence that he lied about other matters during the case. For example, he admitted that he lied to the officers when he told them that he did not throw the gun and the drugs under the blue car on April 30, and he admitted that he lied when he claimed, in pretrial proceedings, that the officers had promised him leniency if he would agree to give his statement. He also points to the testimony of his mother and daughter, who branded him a liar and thief.

"We review the district court's calculation of the quantity of drugs attributable to a defendant for sentencing purposes for clear error." *United States v. Crawford*, 734 F.3d 339, 342 (4th Cir. 2013) (cleaned up). "Under this clear error standard, we will reverse the

14

district court's finding only if we are left with the definite and firm conviction that a mistake has been committed." *Id.* "When a court renders factual findings based on determinations regarding the credibility of witnesses, we give even greater deference to the trial court's findings." *United States v. Slager*, 912 F.3d 224, 233 (4th Cir. 2019).

The district court observed Henderson's testimony at the sentencing hearing, disavowing the veracity of his confession, and reviewed his videotaped confession. In light of Henderson's recantation, the government also presented the district court with additional witnesses and evidence that corroborated the extent of Henderson's drug trafficking activities. Faced with this classic credibility determination, the district court found that Henderson was more likely telling the truth when he confessed than when he testified at the sentencing hearing. Henderson has given us no plausible reason upon which we could find that this finding was clearly erroneous.[3]

B.

Having determined that there is no procedural error, we turn to Henderson's challenge to the substantive reasonableness of the sentence. We review the substantive reasonableness of a sentence for an abuse of discretion. *See United States v. Louthian*, 756

---

[3] To the extent Henderson relies upon the fact that the jury convicted him of the lesser included offense of conspiracy to distribute less than 500 grams of cocaine and a quantity of crack cocaine, that is of no moment. "It has long been established that sentencing courts may consider acquitted conduct in establishing drug amounts for the purpose of sentencing." *United States v. Davis*, 918 F.3d 397, 405 (4th Cir. 2019) (cleaned up). "[T]he court must find the drug amounts established by a preponderance of the evidence. Thus, even if a court knows that a jury had a *reasonable doubt* about drug quantities, that doubt would not preclude the court's finding of those quantities by a *preponderance of the evidence*, a lower standard." *Id.*

F.3d 295, 306 (4th Cir. 2014). "Any sentence that is within or below a properly calculated Guidelines range is presumptively reasonable." *Id.* The "presumption can only be rebutted by showing that the sentence is unreasonable when measured against the 18 U.S.C. § 3553(a) factors." *Id.* The factors include, *inter alia*, "the nature and circumstances of the offense and the history and characteristics of the defendant," § 3553(a)(1), "the need for the sentence imposed" to "provide just punishment for the offense" and "afford adequate deterrence to criminal conduct," § 3553(a)(2)(A), (B), "to protect the public from further crimes of the defendant," § 3553(a)(2)(C), and "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," § 3553(a)(6).

Henderson argues that the district court's 324-month sentence, although below the Guidelines range, is substantively unreasonable because it was greater than necessary to comply with the purposes of sentencing. *See* 8 U.S.C. § 3553(a). In particular, he points to his history and characteristics, including his troubled childhood which involved physical and verbal abuse of his mother by his stepfather and Henderson's ensuing drug and alcohol addiction. He also argues that the sentence is substantially longer than the median sentences that federal courts have imposed for more serious offenses.

Henderson has plainly failed to overcome the presumption of reasonableness that we apply to this below-Guidelines sentence. The district court carefully considered all of the § 3553(a) factors, including the history and characteristics that Henderson relies upon, as well as his age. However, the district court also considered Henderson's substantial criminal conduct and history and the need to protect the public, noting in particular that

16

Henderson's criminal history was "probably the highest" the court had seen.  J.A. 547. Having weighed the pertinent facts, the district court then imposed a sentence that was ten years below the minimum Guideline's calculation.  Considering the totality of the circumstances, we hold that the district court did not abuse its discretion.

IV.

For the foregoing reasons, we affirm Henderson's criminal convictions and sentence.

*AFFIRMED*